912 So.2d 561 (2005)
BOCA BURGER, INC., etc., Petitioner,
v.
Richard FORUM, Respondent.
No. SC01-1830.
Supreme Court of Florida.
July 7, 2005.
As Revised on Denial of Rehearing September 29, 2005.
*563 John R. Hargrove and W. Kent Brown of Heinrich, Gordon, Hargrove, Weihe and James, P.A., Fort Lauderdale, FL, Edna L. Caruso of Caruso, Burlington, Bohn and Campiani, P.A., West Palm Beach, FL, and John A. Beranek of Ausley and McMullen, Tallahassee, FL, for Petitioner.
James Fox Miller, Charles Fox Miller and Greg A. Lewen of Miller, Schwartz and Miller, P.A., Hollywood, FL, for Respondent.
Paul D. Jess, Tallahassee, FL, William C. Gentry, Jacksonville, FL, and Robert S. Peck, Washington, DC, on behalf of the Academy of Florida Trial Lawyers, Inc.; Florida Consumer Action Network, Inc.; Coalition for Family Safety, Inc.; Florida League of Conservation Voters, Inc.; Florida AFL-CIO; Association of Flight Attendants, AFL-CIO; Des Action, National; Florida State Conference of Branches of NAACP; Florida National Organization for Women, Inc.; Children's Advocacy Foundation, Inc.; Al J. Cone; and the Florida Alliance for Retired Americans, Inc., as Amici Curiae.
George N. Meros, Jr., and Lori S. Rowe of Gray, Harris and Robinson, P.A., Joseph W. Hatchett of Akermann, Senterfitt and Edison. P.A., Tallahassee, FL, and Raymond Ehrlich of Holland and Knight, Jacksonville, FL, on behalf of Publix Supermarkets; Citizens for a Sound Economy; Associated Industries of Florida; Florida Chamber of Commerce; Florida Institute of CPA's; Florida Medical Association; Florida Retail Federation; Florida United Business Association; National Federation of Independent Business; Association of Community Hospitals and Health System of Florida, Inc.; City of Orlando; Dade County; Florida Association of Counties; Florida League of Cities; Florida Sheriffs Association; and Tort Reform United Effort (TRUE), as Amici Curiae.
CANTERO, J.
We review Forum v. Boca Burger, Inc., 788 So.2d 1055 (Fla. 4th DCA 2001), which expressly and directly conflicts with Volpicella v. Volpicella, 136 So.2d 231, 232 (Fla. 2d DCA 1962). The conflict concerns whether a trial court has discretion to deny a plaintiff leave to amend the complaint once before a responsive pleading is served. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.; Boca Burger, Inc. v. Forum, 817 So.2d 844 (Fla.2002) (granting review). While we grant jurisdiction to review this issue, we also have authority to address other issues properly raised. See Savoie v. State, 422 So.2d 308, 310 (Fla. 1982) (stating that once the Supreme Court accepts jurisdiction over a case to resolve the legal issue in conflict, it may, in its discretion, consider other issues properly raised and argued before the Supreme Court). For the reasons we explain below, we hold that a plaintiff has the absolute right to amend a complaint once as a matter of course before a responsive pleading is served, and a trial court has no discretion to deny such an amendment; that a defendant may assert an affirmative defense, including the defense of federal preemption, in a motion to dismiss; and that an appellate court may, in appropriate circumstances, impose sanctions on an appellee or its lawyer for its frivolous defense of a patently erroneous trial court order.

I. BACKGROUND AND FACTS
Respondent Richard Forum filed an action against petitioner Boca Burger, Inc., seeking declaratory judgment, injunctive relief, and damages under the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"). See §§ 501.201-.213, Fla. Stat. (2000). Boca Burger filed a motion to dismiss with prejudice, arguing *564 that Forum's complaint failed to state a cause of action and was otherwise preempted by federal and state law. For purposes of the motion, Boca Burger assumed that Forum purported to allege an FDUTPA violation in connection with the manufacture and distribution of a food product, which is Boca Burger's sole line of business. Boca Burger argued that any such claim was preempted by Florida's Food Safety Act, sections 500.01-.601, Florida Statutes (2000), which grants the Department of Agriculture and Consumer Services exclusive jurisdiction to protect the public from injury flowing from intrastate commerce in food. It further argued that any claim not preempted by Florida law was preempted by the Federal Food, Drug and Cosmetic Act, which governs the manufacture and distribution of food through interstate commerce. See 21 U.S.C. §§ 301-397 (2000).
Boca Burger scheduled a hearing on its motion to dismiss. On the morning of the hearing, Forum, through new (though not substitute) counsel, filed an amended complaint without leave of court. The amended complaint asserted multiple claims for relief arising from the alleged "intentional and negligent misrepresentations and omissions by [Boca Burger] concerning the nature and ingredients of their purportedly `all natural' vegetarian hamburger patty substitute." Forum accused Boca Burger of omitting ingredients from the product label. Based on these facts, Forum alleged both statutory and common law violations.[1] The district court summarized what transpired at the hearing:
The amended complaint was filed over the names of three sets of lawyers who had not appeared on the original complaint, but one had the same address as counsel who filed the original complaint. At the hearing the trial judge first mentioned both the filing of the amended complaint and the fact that the lawyer appearing at the hearing on behalf of plaintiff was not the lawyer who had signed the original complaint. Counsel responded that he had filed a notice of appearance that morning along with the amended complaint. The trial judge replied that he had a "fundamental problem" with both aspects: the complaint had been amended without leave of court, and the lawyer at the hearing was not the lawyer who had signed the original complaint on plaintiff's behalf.
The trial judge asked defense counsel if they had any comments on both matters raised by the court. Defense counsel first addressed the appearance of different attorneys who were now representing plaintiff. He stated that the lawyer who had filed the original pleading had his own firm, and that one of the lawyers signing the amended pleading had a different firm but at the same address as the first. He admitted that he had communications before the hearing with one of the new lawyers listed on the amended pleading but added that "he's never defined exactlyto my knowledgehis role. . . ." The tone and tenor of his remarks was to hint that there was some impropriety in these new lawyers appearing on plaintiff's behalf, notably failing to say what it might be. Defense counsel failed to acknowledge that the rules expressly permit the appearance of additional attorneys for a party without leave of court. The judge again suggested disapproval of the appearance but decided to "skip that one for a minute."

*565 Turning to the issue of amending the complaint without leave of court, the trial judge next noted that the hearing had been set for nearly four weeks and that the amended complaint had been filed only on the day of the hearing. Plaintiff's counsel pointed out that the rules permit an amendment without leave of court before a responsive pleading is filed and that the pending motion to dismiss was not a responsive pleading. Again the court turned to defense counsel.
Defense counsel argued case authority from a federal trial court in Michigan that, as he put it, "suggests that attempting to amend a complaint while a motion to dismiss is pending is procedurally improper and causes prejudice to the party seeking to dismiss the complaint." He also cited a bankruptcy case which he claimed was to the same effect. He then added that our decision in Life General Security Insurance Co. v. Horal, 667 So.2d 967 (Fla. 4th DCA 1996), "suggests that leave to amend or attempting to amend a complaint at the eleventh hour would cause prejudice to the opposing party, and it is within the discretion of the trial court to deny." While conceding that "the rule is what it is," he went on to contend "it is within the court's discretion to deny leave to amend."
. . . .
The trial judge thereupon announced that he would proceed with the hearing for argument on the pending motion to dismissbut only as to the initial complaint. The judge added that he would not "recognize" the amended complaint "as filed." The outcome was that the court granted the motion to dismiss the original complaint with prejudice, thereby refusing to permit any amendments to the pleading, and finding that the complaint raised claims that are "pre-empted" by federal and Florida law.
Forum, 788 So.2d at 1057-59 (footnotes omitted).
On appeal, the Fourth District reversed. The court did not "[overlook] defendant's argument that plaintiff's claims [were] pre-empted by federal law," but concluded that the "essential problem with that argument is that it was being raised at the wrong time, under the auspices of the wrong motion." Id. at 1061. According to the district court, Boca Burger's preemption argument constituted an avoidance, not a real defense, that should have been pled only as an affirmative defense and resolved on motion for summary judgment.
The district court also reversed the trial court's decision to dismiss the complaint, holding that Forum could amend his complaint by right, and that the amended complaint superseded the initial complaint. According to the district court, Boca Burger's counsel misled the trial court into believing that it had discretion to refuse Forum's amended complaint. Id. at 1059. Concluding that counsel could not have made such an argument in good faith at either the trial or appellate levels, the district court applied the recently amended attorney's fees statute and imposed trial and appellate court sanctions against Boca Burger's counsel. See § 57.105, Fla. Stat. (2000). We granted review. Boca Burger, 817 So.2d at 844.

II. ANALYSIS
We focus on three issues discussed in the district court's opinion: (A) whether a trial court has any discretion to deny a plaintiff the right to amend the complaint once before an answer is served; (B) whether a defendant may assert federal preemption in a motion to dismiss; and (C) whether the district court properly imposed sanctions against Boca Burger's *566 counsel for both its trial court and appellate court conduct.

A. The Right to Amend a Complaint
We first address the issue on which conflict exists: whether a trial court has any discretion to deny a plaintiff's first amendment to the complaint before a responsive pleading is served. We hold that the plain language of the rule grants trial courts no such discretion.
The Fourth District held that it is "incontrovertible that plaintiff had every right under the ruleso early in the caseto amend his complaint without leave of court, and therefore the legal sufficiency of the original complaint was clearly moot." 788 So.2d at 1059. The court then discussed other cases:
There were some earlier cases outside this district finding a residual discretion in the trial judge to deny leave to amend when sought by a party before the filing of a responsive pleading, but even they go on to hold that it is an abuse of discretion to deny the amendment unless as a matter of law plaintiff clearly could never state a cause of action.
Id. at 1059. The court cited Volpicella, 136 So.2d at 232, as one of those cases. In Volpicella, the trial court granted the defendant's motion to dismiss without explaining the grounds for dismissal and without granting plaintiff leave to amend. The plaintiff appealed, arguing that the court should have granted leave to amend. The Second District reversed, holding that the trial court abused its discretion in denying leave to amend. In doing so, the court stated:
Under [rule 1.190], a party may amend his pleading once as a matter of course at any time before a responsive pleading is served. This rule has not yet been construed as depriving a trial court of discretion to withhold leave to amend a pleading to which no response has been served. The rule does however indicate that a denial of leave to amend in such a case amounts to an abuse of discretion unless a complaint is clearly not amendable.
Id.[2]
In Forum, the Fourth District "doubt[ed] the correctness of the second district's assertion of residual discretion. Rule 1.190(a) states a rule, not a discretion, as regards to amending before a responsive pleading is filed." 788 So.2d at 1059. Thus, the two cases conflict on whether the rule grants trial courts any discretion to deny a plaintiff's first amendment to the complaint before an answer is served. We agree with the Fourth District, as we explain below.
Rule 1.190(a) of the Florida Rules of Civil Procedure permits the amendment of a pleading "once as a matter of course at any time before a responsive pleading is served." Fla. R. Civ. P. 1.190(a). The rule reads in its entirety:
A party may amend a pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed on the trial calendar, may so amend it at any time within 20 days after it is served. Otherwise a *567 party may amend a pleading only by leave of court or by written consent of the adverse party. If a party files a motion to amend a pleading, the party shall attach the proposed amended pleading to the motion. Leave of court shall be given freely when justice so requires. A party shall plead in response to an amended pleading within 10 days after service of the amended pleading unless the court otherwise orders.
Fla. R. Civ. P. 1.190(a).[3] Thus, by its terms the rule provides for amendment as of right (first sentence) and amendment by agreement or leave of court (second sentence), depending on the circumstances.
Several courts have recognized that the first sentence of the rule grants plaintiffs an automatic right to amend the complaint once before a responsive pleading is served. See, e.g., Vanderberg v. Rios, 798 So.2d 806, 807 (Fla. 4th DCA 2001); Fusilier v. Markov, 676 So.2d 1053, 1054 (Fla. 3d DCA 1996); Posey v. Magill, 530 So.2d 985, 986 (Fla. 1st DCA 1988); Abston v. Bryan, 519 So.2d 1125, 1127 (Fla. 5th DCA 1988); Fla. Power & Light Co. v. Sys. Council U-4 of Int'l Bhd. of Elec. Workers, 307 So.2d 189, 191 (Fla. 4th DCA 1975); Bryant v. Small, 271 So.2d 808, 809 (Fla. 3d DCA 1973). Moreover, a motion to dismiss is not a "responsive pleading" because it is not a "pleading" under the rules. See Fla. R. Civ. P. 1.100(a) (designating permissible pleadings and providing that "[n]o other pleadings shall be allowed"); see also Vanderberg, 798 So.2d at 807 (noting that a motion to dismiss is not a pleading) (citing Forum, 788 So.2d at 1057). Therefore, the filing of a motion to dismiss does not terminate a plaintiff's absolute right to amend the complaint "once as a matter of course."
Thus, the district court was correct in determining that Forum could amend his complaint without leave of court, regardless of the pending motion to dismiss, and that the trial court erred in refusing to recognize the amended complaint. Under the plain language of the first sentence of rule 1.190(a), a plaintiff has an absolute right to amend the complaint before a responsive pleading is served. Because Boca Burger had not served its answer, and had only filed a motion to dismiss, Forum had the right to file an amended complaint, even if that amendment was filed on the day ofor even just beforethe hearing on Boca Burger's motion to dismiss the original complaint. The rule clearly grants a plaintiff one free amendment to perfect the complaint before an answer is served.
A judge's discretion to deny amendment of a complaint arises only after the defendant files an answer or if the plaintiff already has exercised the right to amend once. At that time, the second and fourth sentences of rule 1.190(a) apply: "Otherwise a party may amend a pleading only by leave of court or by written consent of the adverse party. . . . Leave of court shall be given freely when justice so requires." (Emphasis added.)
Although Volpicella implied that a trial court may deny leave to amend where the complaint is clearly not amendable, a court only has such discretion under the second sentence of the rule, not under the first. The cases that have recognized a court's discretion to deny amendment in those circumstances concerned either a plaintiff's second (or subsequent) amendment or an amendment requested after the answer was filed. See, e.g., Fla. Nat'l Org. for Women, Inc. v. State, 832 So.2d 911, 915 (Fla. 1st DCA 2002) (holding that where *568 the plaintiff had amended once before a responsive pleading had been served and once again after the defendant filed an answer, the trial court abused discretion in refusing leave to amend the second amended complaint); Kohn v. City of Miami Beach, 611 So.2d 538, 539 (Fla. 3d DCA 1992) (holding that the trial court did not abuse its discretion where the plaintiff failed in four attempts to cure the defects in the complaint); Bouldin v. Okaloosa County, 580 So.2d 205, 207 (Fla. 1st DCA 1991) (stating that when a party seeks to amend a complaint after a responsive pleading has been served, leave should be granted unless the court finds a clear abuse of the privilege to amend or the complaint is clearly not amendable); see also Dimick v. Ray, 774 So.2d 830, 835 (Fla. 4th DCA 2000) (holding that the trial court abused its discretion in denying motion for leave to amend plaintiff's first amended complaint); Adams v. Knabb Turpentine Co., 435 So.2d 944, 946 (Fla. 1st DCA 1983) (same); Highlands County Sch. Bd. v. K.D. Hedin Constr., Inc., 382 So.2d 90, 91 (Fla. 2d DCA 1980) (same).
As the Fourth District held, a court has no discretion to deny an amendment under the first sentence of the rule. A defendant may contest the legal viability of a first amended complaint by moving to dismiss the amended complaint, not by contesting the plaintiff's right to amend. We disapprove Volpicella to the extent it holds that a trial court retains any discretion to deny an amendment under such circumstancesregardless of whether the plaintiff simply files an amended complaint or requests leave of court to file one.

B. Pleading Preemption in a Motion to Dismiss
We next discuss whether the defense of federal preemption may properly be asserted in a motion to dismiss. The district court held that Boca Burger could only plead the preemption defense as an affirmative defense, and therefore the issue could only be resolved on motion for summary judgment. 788 So.2d at 1062. On this point we disagree. Florida courts, including this Court, have held that the issue of federal preemption is a question of subject matter jurisdiction. See Jacobs Wind Elec. Co. v. Dep't of Transp., 626 So.2d 1333, 1335 (Fla.1993); Bankers Risk Mgmt. Servs., Inc. v. Av-Med Managed Care, Inc., 697 So.2d 158, 160 (Fla. 2d DCA 1997); Fla. Auto. Dealers Indus. Benefit Trust v. Small, 592 So.2d 1179, 1183 (Fla. 1st DCA 1992). Lack of subject matter jurisdiction may be properly asserted in a motion to dismiss. See Fla. R. Civ. P. 1.140(b). Florida courts regularly review arguments concerning subject matter jurisdiction on motions to dismiss. See, e.g., Bradshaw v. Ultra-Tech Enters., Inc., 747 So.2d 1008, 1009 (Fla. 2d DCA 1999) (affirming dismissal of complaint based on ERISA preemption of state law); Doe v. Am. Online, Inc., 718 So.2d 385, 388 (Fla. 4th DCA 1998) (rejecting the argument that a federal preemption defense constituted an affirmative defense that should have been raised in an answer, not on a motion to dismiss); Bankers, 697 So.2d at 160 (addressing an issue raised in defendant's motion to dismiss regarding federal preemption of plaintiff's claims).
Therefore, we reject the Fourth District's holding in this case that Boca Burger could not raise its preemption defense in a motion to dismiss. A defendant may, at its option, raise any affirmative defense, including the defense of federal preemption, in a motion to dismiss. Of course, when a defendant asserts such a defense in a motion to dismiss, a trial court must determine the issue as a matter of law based only on the well-pleaded allegations in the complaint, assuming the truth *569 of the facts asserted. See Hanft v. Phelan, 488 So.2d 531, 532 n. 1 (Fla.1986).

C. The Imposition of Sanctions for Defending a Trial Court Order
The district court imposed sanctions on Boca Burger both for its conduct in the trial court and its conduct on appeal. The trial court had not imposed sanctions for such actions, and no authority exists for an appellate court's imposition of sanctions for conduct occurring in the trial court. "Where the trial court has failed to make . . . findings [under section 57.105], [the appellate court is] without authority to do so in the first instance on appeal." Kurzweil v. Larkin Hosp. Operating Co., 684 So.2d 901, 903 (Fla. 3d DCA 1996). If the district court was concerned with counsel's conduct in the trial court, the proper procedure would have been to remand for the circuit court to allow the trial court to determine for itself whether to impose sanctions.[4]
Regarding sanctions for counsel's conduct on appeal, however, we hold that a district court may, in appropriate circumstances, impose sanctions for counsel's defense of a patently erroneous order. As we explain below, (1) under the new version of section 57.105, Florida Statutes, an appellee as well as an appellant may be subject to sanctions; (2) allowing appellate courts to impose sanctions on appellees for frivolous defense of trial court orders will not chill representation, but instead will emphasize that counsels' obligations as officers of the court override their obligations to zealously represent their clients; and (3) because the district court's opinion addressed almost exclusively counsel's conduct in the trial court, we cannot determine to what extent, if any, the court intended to impose sanctions for conduct that occurred in the appellate court.

1. An appellee may be subject to sanctions

The petitioner argues that an appelleewho by definition is defending a trial court's ordercannot be sanctioned for asserting a frivolous defense on appeal. Some Florida courts agree with the petitioner's position. See State Dep't of Highway Safety & Motor Vehicles v. Salter, 710 So.2d 1039, 1041 (Fla. 2d DCA 1998) (holding that because the judgment of a trial court carries a presumption of correctness, defense of that judgment necessarily presents a justiciable issue); Coral Springs Roofing Co. v. Campagna, 528 So.2d 557, 558 (Fla. 4th DCA 1988) (same); McNee v. Biz, 473 So.2d 5, 6 (Fla. 4th DCA 1985) (holding that the appellate court could not award fees under section 57.105 against an appellee that did not cross-appeal the trial court's order because, as a matter of law, the appellee's position had to embody a justiciable issue of law or fact). At least one appellate court, however, has awarded fees to the appellant under section 57.105. See Rapid Credit Corp. v. Sunset Park Centre, Ltd., 566 So.2d 810, 812 n. 2 (Fla. 3d DCA 1990) (noting that the court had found counsel's attempt to defend a default *570 on appeal so frivolous that it had granted appellant fees under section 57.105) (Schwartz, C.J., specially concurring).
All these cases were decided under a prior version of section 57.105. In 1999, the Legislature substantially rewrote that statute to significantly broaden the courts' authority to award attorneys' fees under that section. As revised, the statute reads:
(1) Upon the court's initiative or on motion of any party, the court shall award a reasonable attorney's fee to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial:
(a) Was not supported by the material facts necessary to establish the claim or defense; or
(b) Would not be supported by the application of then-existing law to those material facts.
However, the losing party's attorney is not personally responsible if he or she has acted in good faith, based on the representations of his or her client as to the existence of those material facts. If the court awards attorney's fees to a claimant pursuant to this subsection, the court shall also award prejudgment interest.
(2) Paragraph (1)(b) does not apply if the court determines that the claim or defense was initially presented to the court as a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law, as it applied to the material facts, with a reasonable expectation of success.
(3) At any time in any civil proceeding or action in which the moving party proves by a preponderance of the evidence that any action taken by the opposing party, including, but not limited to, the filing of any pleading or part thereof, the assertion of or response to any discovery demand, the assertion of any claim or defense, or the response to any request by any other party, was taken primarily for the purpose of unreasonable delay, the court shall award damages to the moving party for its reasonable expenses incurred in obtaining the order, which may include attorney's fees, and other loss resulting from the improper delay.
§ 57.105(1)-(3), Fla. Stat. (2000). As the district court noted in this case, 788 So.2d at 1061, the statute no longer applies only to an entire action; it now applies to any claim or defense. The standard for granting fees also has changed. Previously, a movant had to show "a complete absence of a justiciable issue of either law or fact raised by the losing party." § 57.105, Fla. Stat. (Supp.1978). Under the revised version, however, a movant need only show that the party and counsel "knew or should have known" that any claim or defense asserted was (a) not supported by the facts or (b) not supported by an application of "then-existing" law. § 57.105, Fla. Stat. (2000). The amendments therefore greatly expand the statute's potential use.
We hold that an appellee is not shielded as a matter of law from the imposition of sanctions in an appropriate case. We acknowledge that an appellee, by definition, is defending an order of the trial court. Appellate courts, therefore, should impose sanctions against an appellee only in rare circumstances. Moreover, because a district court of appeal is, in the vast majority of cases, the court of last resort, it should exercise great restraint in imposing *571 appellate sanctions. We also warn, however, that an appellee cannot hide behind the "presumption of correctness" of an order that the appellee itself procured by misrepresenting the law or the facts. The presumption of correctness is necessarily based on another presumption: that the appellee correctly informed the trial court of the facts and applicable law. Busy judges managing overloaded motion calendars often depend on the attorneys appearing before them to provide them with accurate information about the issues involved, the facts relevant to those issues, and the law applicable to those facts. When it becomes apparent that counsel misrepresented this information, counsel cannot later hide behind the presumption of correctness to avoid sanctions.
Appellate courts, too, must manage heavy caseloads. They depend on counsel to accurately state both the facts and the applicable law. Therefore, regardless of trial counsel's conduct or representations, appellate counsel (who often is separate from trial counsel) has an independent ethical obligation to present both the facts and the applicable law accurately and forthrightly. This will sometimes require appellate counsel to concede error where, although trial counsel obtained a favorable result, either the facts were not as represented to the trial court or the law is clearly contrary to the appellee's position and no good-faith basis exists to argue that it should be changed.

2. Counsel's ethical obligations

Petitioner warns that adopting a rule allowing sanctions against appellees will require "the extreme, indeed unprofessional, act of `throwing in the towel' when there is any chance that an order may be reversed on appeal." This argument overlooks counsel's professional responsibilities as officers of the court. We do not hold that appellate counsel should concede error in all or even many cases. And whether counsel should concede error does not depend on the statistical chances for reversal. In (we hope) rare cases, however, the trial court, whether because of its own misconceptions or counsel's misrepresentations, may incorrectly assume the relevant facts or apply the wrong law. In such circumstances, appellate counsel has a duty to recognize and apprise the appellate court of that fact.
Contrary to petitioner's arguments, allowing sanctions against appellees or their counsel for defending indefensible orders requires the quintessentially professional act of admitting defeat when there is no chance of victory, or when victory will have been obtained at the price of integrity and truth. "While counsel does have an obligation to be faithful to [his] [client's] lawful objectives, that obligation cannot be used to justify unprofessional conduct by elevating the perceived duty to zealously represent over all other duties." Lingle v. Dion, 776 So.2d 1073, 1078 (Fla. 4th DCA 2001) (alterations in original) (quoting Visoly v. Sec. Pac. Credit Corp., 768 So.2d 482, 492 (Fla. 3d DCA 2000)). Section 57.105, as well as the Florida Bar rules of professional conduct and even the oath of admission to the Florida Bar, all warnif any warning were neededthat counsel must be governed by considerations other than mere zealous advocacy for the client. See § 57.105, Fla. Stat. (2002) (allowing a court to sanction the losing party and the losing party's attorney if the court finds the losing party's attorney knew or should have known that a claim or defense was not supported by the application of then-existing law); R. Regulating Fla. Bar 4-3.3(a)(1) ("A lawyer shall not knowingly make a false statement of material fact or law to a tribunal."); Oath of Admission, Fla. Bar J., Sept. 2004, at 2 ("I will employ *572 for the purposes of maintaining the causes confided to me such means only as are consistent with truth and honor, and will never seek to mislead the judge or jury by any artifice or false statement of fact or law."). Rule 4-3.3(a)(3) of the Rules Regulating the Florida Bar specifically prohibits an attorney from knowingly "fail[ing] to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." Therefore, contrary to the petitioner's assertions, the rules already require counsel to concede error on appeal when appropriate.
This is not a new concept. Appellees regularly concede error. Cases in which the State has conceded error on appeal are legion.[5] Confessions of error in civil cases also occur frequently.[6] The sheer number of such cases demonstrates that not only do the rules require counsel to concede error in appropriate cases; counsel can and do adhere to these rules in practice. Lawyers recognize every day when the defense of a trial court's order is untenable. The petitioner's protestations that such concessions would be "throwing in the towel" reflect an attitude that Chief Judge Schwartz has lamented:
Too many members of the Bar practice with complete ignorance of or disdain for the basic principle that a lawyer's duty to his calling and to the administration of justice far outweighsand must outweigheven his obligation to his client, and, surely what we suspect really motivates many such inappropriate actions, his interest in his personal aggrandizement.
*573 Rapid Credit Corp., 566 So.2d at 812 n. 1 (Schwartz, C.J., specially concurring).
Finally, the district court's opinion aptly responds to the petitioner's proposition that conceding error on appeal is unprofessional:
The heart of all legal ethics is in the lawyer's duty of candor to a tribunal. It is an exacting duty with an imposing burden. Unlike many provisions of the disciplinary rules, which rely on the court or an opposing lawyer for their invocation, the duty of candor depends on self-regulation; every lawyer must spontaneously disclose contrary authority to a tribunal. It is counter-intuitive, cutting against the lawyer's principal role as an advocate. It also operates most inconvenientlythat is, when victory seems within grasp. But it is precisely because of these things that the duty is so necessary.
Although we have an adversary system of justice, it is one founded on the rule of law. Simply because our system is adversarial does not make it unconcerned with outcomes. Might does not make right, at least in the courtroom. We do not accept the notion that outcomes should depend on who is the most powerful, most eloquent, best dressed, most devious and most persistent with the last wordor, for that matter, who is able to misdirect a judge. American civil justice is so designed that established rules of law will be applied and enforced to insure that justice be rightly done. Such a system is surely defective, however, if it is acceptable for lawyers to "suggest" a trial judge into applying a "rule" or a "discretion" that they knowor should knowis contrary to existing law. Even if it hurts the strategy and tactics of a party's counsel, even if it prepares the way for an adverse ruling, even though the adversary has himself failed to cite the correct law, the lawyer is required to disclose law favoring his adversary when the court is obviously under an erroneous impression as to the law's requirements.
Forum, 788 So.2d at 1062 (footnote omitted).

3. Boca Burger's defense of the order

We now examine counsel's actions in this case. A lower court's decision to impose sanctions is reviewed under an abuse of discretion standard. See Harless v. Kuhn, 403 So.2d 423, 425 (Fla.1981) (noting that "[i]n the absence of an abuse of discretion the sanctions imposed by [a] judge should stand"). As explained above, an appellate court only has authority to impose sanctions under section 57.105 for conduct occurring in the appellate court. Conversely, the trial court should determine any sanctions for conduct occurring in that court. Therefore, we quash that part of the district court's decision that imposes sanctions for conduct that occurred in the trial court. The district court is free to remand the issue of trial court sanctions to the circuit court for consideration.
We are perplexed by the dissent's accusation that we have "overlooked or failed to consider the trial transcript record" as it relates to this issue. Dissenting op. at 27. We have, of course, thoroughly examined that record. But our disposition of this issuequashing the district court's order insofar as it imposes sanctions for counsel's trial court conductrenders moot any discussion of counsel's conduct in that court. The dissent may well be correct that such sanctions would be inappropriate. As we have explained, however, that determination must first be made by *574 the trial court.[7]
We must now determine whether the district court abused its discretion in imposing sanctions for conduct that occurred on appeal. We have encountered difficulty in doing so, however. The vast majority of the district court's opinion discusses counsel's representations in the trial court, not on appeal; it appears that the district court imposed sanctions primarily for conduct that occurred in the trial court. Therefore, we cannot determine whether the district court intended to impose sanctions for any conduct that occurred on appeal. We therefore remand to the district court for it to reconsider its order imposing sanctions, addressing only conduct on appeal. In so doing, we neither approve nor disapprove the imposition of sanctions.
The dissent protests that the district court should not be allowed to impose sanctions for the conduct on appeal, because it was "incorrect on multiple important legal issues it has addressed." Dissenting op. at 29. But whether the district court may impose sanctions depends not on its decision, which we have before us and have reviewed, but rather on counsel's conduct. The dissent suggests that counsel did have a good-faith basis for each representation it made on appeal. We have not asserted otherwise. Our remand to the district court merely recognizes that the issue should be decided by the court before which relevant conduct occurred.

III. CONCLUSION
We approve that part of the district court's opinion holding that a plaintiff has an absolute right to amend the complaint once as a matter of course before a responsive pleading is served. It therefore follows that leave of court is unnecessary to amend a complaint for the first time before the defendant has filed an answer. We disapprove the district court's opinion, however, to the extent it holds that a preemption argument cannot be presented in a motion to dismiss. To the contrary, we hold that it can. Finally, we conclude that the district court had no authority to impose sanctions for the conduct of Boca Burger and its counsel in the trial court. Because we cannot determine how much, if any, of the district court's decision was based on counsel's conduct on appeal, we remand to the district court to consider that issue. If the district court does impose sanctions, it should state clearly whether its sanctions are to be imposed against Boca Burger itself, its counsel, or both. The court may also remand to the trial court to determine whether to impose sanctions for conduct that occurred in that court.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, and BELL, JJ., concur.
LEWIS, J., dissents with an opinion, in which QUINCE, J., concurs.
*575 LEWIS, J., dissenting.
The majority has now ultimately concluded that the district court below incorrectly imposed sanctions and did so as it erroneously and "almost" exclusively addressed and considered trial level conduct. Further, inherent in the majority's decision is a recognition that the decision we review facially does not present a valid basis to support the imposition of punishment for conduct in the appellate court because the majority concedes that it cannot even determine whether or if there was an intent to punish for any such conduct. Implicit in the decision today is the determination that not only was the imposition of sanctions erroneous, but it was an abuse of discretion which is defined under Florida law as a result no reasonable person could adopt under the circumstances. See Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980) (noting that "[d]iscretion... is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted"). Even though this abuse of discretion has occurred, the majority now remands this case for additional consideration of sanctions. The district court has authored an extensive opinion which explained why punishment was imposed in this case, which has now been rejected by this Court. I cannot agree with the process that rejects the punishment for the reasons already stated, but returns the matter for reconsideration of punishment apparently to be based on some previously undisclosed reason. The process is flawed, without precedent, and misdirected in at least three separate and distinct ways. The record of proceedings is not "moot," the propriety of a decision of a court on a principle of law is most certainly an essential consideration before a party may be properly punished for asserting a contrary legal argument, and a proper statement and discussion of the basis of a court's order as reflected in the record of proceedings is absolutely critical in analyzing whether the order is "patently erroneous." I dissent.
It is clear that the majority has not merely overlooked or failed to consider the trial transcript record and the significant matters reflected therein, but it now proclaims that such is irrelevant and "moot." I find it disturbing that the majority deems a discussion and consideration of the trial level record "moot" when that defines the parameters of appellate review and the basis of the order under review by a district court. While I have no dispute with the majority's discussion of Florida Rule of Civil Procedure 1.190 and its separate analysis with regard to the presentation of a defense based upon preemption in a motion to dismiss in the abstract, I do have strong disagreements with the failure to even address the applicable Florida Rules of Judicial Administration which were the foundation of the trial court's order, the influence that the non-preserved issue concerning the procedural manner in which a defense of preemption may be presented had on the district court's decision to punish counsel, and the imposition of punishment under these circumstances. In my view, the transcript of the trial-level hearing which resulted in the order of dismissal reflects that the procedural rule discussed by the district court of appeal was not at all the basis for the trial court determination, and the argument as to when and the manner in which a defense of preemption can be properly presented was never even discussed or preserved as an issue for appellate review. See Tillman v. State, 471 So.2d 32 (Fla.1985); Dober v. Worrell, 401 So.2d 1322 (Fla.1981). It is not that I have any disagreement whatsoever with the district court's or majority's *576 discussion of "professionalism" in the abstract, because who can quarrel with those impassioned pleas to the aphoristic approach of motherhood, apple pie, professionalism and the American flag? It is that the discussion simply should not and does not find a home here in a case in which the majority has also determined that the district court which has punished a party and counsel with sanctions is wrong with regard to multiple substantial issues it has discussed. If a court is wrong on a principle of law, most assuredly, a party should not be punished for advancing a contrary correct principle of law.
The punished party has successfully demonstrated that the district court below is incorrect on multiple important legal issues it has addressed, but, according to the majority, counsel may be punished and sanctioned under these circumstances for reasons yet undisclosed by the very court that was wrong on each and every one of these issues and, as the trial record reveals, punished by a court that considered a significant legal issue, interwoven with whether a viable action could ever be filed, that was never discussed at the trial level or preserved for appellate review. This is accomplished in my view by accepting the concept of punishment and proceeding to the argument to rationalize its imposition without reference to that which actually occurred in the trial court as reflected in both defective pleadings and the trial court record. I suggest that the majority view is internally inconsistent, without precedent and consideration of the factors before the trial court, and dangerous precedent for the fair and open presentation of issues and argument by independent counsel which has historically been the backbone of the adversarial system through which this third branch of government fulfills its constitutional role. I do not perceive the circumstances involved here to be as clean and clear as voiced by the majority as it simply quotes from the district court opinion without addressing matters clearly contained in the trial court record. I suggest that a review of the trial transcript is not "moot" and indeed reveals that the district court's description of that which occurred at the trial level is actually very incomplete and the omissions are material to consideration of the issues before us.
The danger of the majority view in authorizing consideration of sanctions has now evolved to become frighteningly clear. The majority will approve consideration of the imposition of punishment when a party relies on a principle of law having an arguable basis in the decisional law of this state (Volpicella v. Volpicella, 136 So.2d 231, 232 (Fla. 2d DCA 1962)), the decisional law is recognized as existing by a district court of appeal, but rejected (Forum v. Boca Burger, Inc., 788 So.2d 1055 (Fla. 4th DCA 2001)), and this Court, as it has done today, recognizes the existence of that decision rejected by the district court of appeal as constituting a conflict in Florida law if the party presents the principle of law but does not specifically cite the correct case. The principle of law is the conflict resolved today and, as explained and applied by the majority, see majority op. at 574, reliance on a principle of law contained in an existing decision that is or establishes the basis for this Court's "conflict" jurisdiction (i.e., in this case, Volpicella addressing the amendment of complaints) that may simply fail to cite a specific case may result in sanctions. Authorization for the imposition of sanctions under these circumstances improperly exposes a multitude of parties and counsel to monetary punishment due to reliance upon principles of law expressed in decisions that may be only later rejected by a higher court. In hindsight, resolution by our Court today of a *577 non-issue at the trial level does not render the conduct of Boca Burger and its counsel so "clearly wrong" or "frivolous" or constitute a "misrepresentation" to justify punishment. The majority has now exposed a significant number of litigants before this Court to an adverse claim for attorney fees and created an entirely new area for increased future litigation.
First, the circumstances erupting in this case demonstrate that a party defendant and its counsel attempted to present the fundamental legal position that the core claim asserted by the plaintiff (whether in the original complaint or any attempted amendment) was preempted as a matter of law by both federal and Florida Statutes, that the defense of preemption was properly asserted in a motion to dismiss, and that based on the foregoing doctrine of preemption, no claim for a private cause of action (whether in the original complaint or any amendment) could ever be maintained under Florida law because the court was without subject matter jurisdiction. Therefore, due to preemption, no amendment to the existing complaint could ever state a viable cause of action. This position was very clearly articulated in the trial level hearing transcript which the majority considers "moot." The trial court accepted such argument and dismissed the action with prejudice. The majority properly concludes that the defendant was correct and the district court was totally wrong with regard to how the defense of preemption may be presented (in a motion to dismiss) in Florida. Importantly, the issue of how such defense may be presented was not even preserved for district court review. The district court below only briefly discussed whether the concept of preemption would ever be applicable but incorrectly held that a preemption defense could be presented only as an avoidance, not a real defense, in an affirmative defense, not a motion to dismiss. Neither the district court nor the majority here have resolved the underlying substantive issue as to whether preemption is or is not applicable as a matter of law, which was specifically determined by the trial court, rendering any procedural issue of amendment, which the appellate courts have seized upon, totally "moot" in the eyes of the trial judge.
Second, accepting the foundational principle that the defense of preemption may be properly presented in a motion to dismiss, we must next turn to the issue of amending complaints under the actual facts presented, not a theoretical discussion of a procedural rule, and the status before the trial court along with the existing law at the time the trial court considered the motion to dismiss. Here, neither the facts nor the law are so absolutely clean and clear as the majority posits.
The majority proclaims that it has "thoroughly examined" the trial record but if so, it certainly is not reflected in this opinion because the majority quotes from only the district court opinion below, which omits numerous substantial material factors we should and must analyze. That which occurred at the trial level is not at all "moot" because if the proceedings were accurately presented, it would become obvious that the issue as defined by the trial judge was not centered upon the general amendment of pleadings.
The initial complaint was an individual action against a single defendant alleging deceptive business practices and false representations with regard to a single manufactured food product in two counts for a single, individual plaintiff signed by one Florida attorney. A single and only defendant, Boca Burger, through its defense counsel, filed a motion to dismiss with prejudice asserting, in pertinent part, that both Florida and federal statutes preempted *578 all claims related to the subject manufactured food product, its exclusive line of business. Unlike some trial courts, it has been represented (without dispute) that the judge to whom this case was assigned personally scheduled special hearings and did so in this case for consideration of the motion to dismiss. Unlike routine motion calendar hearings, the written notice for this specially scheduled hearing ordered that the hearing could not be canceled unless the subject of the motion was resolved by written stipulation filed with the court with a copy delivered directly to the judge.
On the day of this hearing specially scheduled by the trial judge, only a matter of hours before counsel was required to appear, the defendant received a facsimile transmission of a document titled Amended Complaint. The new document asserted a nationwide class action against at least seven other non-party defendants. In this new document, the claim for relief was expanded into nine different theories and counts. However, most importantly, the one consistent factor was that the factual predicate and substance for the core claim continued to be allegations of false representations and deceptive business practices for the identical product, the single manufactured food product, Boca Burger. Thus, from a substantive analysis, the alleged manufactured food product misrepresented remained the exclusive core element of the entire claim and, correspondingly, the defense posture as presented in the motion to dismiss, whether correct or incorrect, remained viable as a substantive principle of law that would preclude the entire claim, if correct.
It must also be noted that the document delivered just hours before the hearing was not signed by the attorney who had filed the original complaint and the name of counsel of record for the plaintiff in the only pending action did not even appear on the new document in any location. The name of counsel of record was conspicuously absent and not listed or mentioned in any way on the amended complaint, nor was it even listed or mentioned in any certificate of service of any paper, including a purported Notice of Appearance. Neither the Amended Complaint nor the Notice of Appearance contained documentation of service on either the party plaintiff, Mr. Forum, or on the only counsel of record Mr. Dawson. The new pleading was signed by an entirely different attorney, an entirely different law firm, and listed an out-of-state limited liability partnership along with a different and new Florida professional corporation as counsel. More importantly to the trial court, neither the attorney who filed the original action, Dawson, nor the party plaintiff was listed as having ever been delivered or served a copy of the new document or Notice of Appearance and apparently no proper required Notice of Appearance as additional co-counsel was ever properly filed. Thus, at the hour of the specially set hearing specifically scheduled by the trial judge, the status of the case and the pleadings were not the clean, clear model of legal practice that the district court below superficially summarized and that the majority has now adopted in quoting only from such opinion. There had been no proper substitution of counsel, no proper withdrawal of counsel, and, at least in the eyes of the trial judge, no proper notice of appearance of additional or co-counsel, or there was at least a significant problem therewith, as required by the Florida Rules of Judicial Administration.
At the time of the hearing, according to the trial judge, the record did not reflect that either counsel of record or the party plaintiff had ever been provided with notice or copies of any of the written materials or pleadings filed with the court. Although *579 these factors in my view may all later be determined to be within the category of being more "technical" than substantive, at least from the perspective of the trial judge below, they did establish the stage for that which followed. An order cannot be considered "patently erroneous" if appellate courts refuse to consider the actual record and the background for entry of the order. Further, it is absolutely clear that the underlying substantive matters remained consistent: the exclusive and core complaint, whether correct or incorrect, was alleged misrepresentations and deceptive practices with regard to a single manufactured food product and the defense of whether Florida and federal statutory preemption applied as a matter of law, whether correct or incorrect, remained viable in the form of a motion to dismiss. This was the status with regard to whether either the original complaint or the purported Amended Complaint was the operative pleading for consideration by the trial judge.
When attorneys appeared for the hearing specially scheduled by the trial judge, the trial court, without any argument from defense counsel, advised counsel that he had carefully studied the pending motion to dismiss and noted that the only counsel of record for the claimant was Mr. Dawson but that a different attorney was present. The court also noted that it was not until two hours and forty-seven minutes before the specially scheduled hearing that a courtesy copy of the pleading signed by an attorney not of record had been provided to the court. The first words from the mouth of defense counsel were directed to an attempted explanation of some background information concerning contact between the attorneys, to which the new attorney who had signed the new pleading interrupted and objected to any information being provided to the Court. He proclaimed that he wanted "to set the rules straight." The trial judge immediately responded to the objection by voicing his concerns with the new pleading to "set the rule straight." The trial judge correctly observed that Mr. Dawson was counsel of record and no proper substitution of counsel or notice had been perfected. Secondly, the judge observed that he had not seen a proper notice of appearance as co-counsel and that there had been a violation of and failure to follow the applicable rules of judicial administration. The court noted that it could only recognize counsel of record. The new attorney responded that a Notice of Appearance had been filed earlier that day but apparently, neither the court nor any others had been provided a copy. The trial court, correctly or incorrectly, was of the view and determined that the purported Notice of Appearance was defective, ineffective and (in the words of the trial judge) not "worth the paper it's written on simply because you are not appearing as co-counsel."
All of this occurred and the trial judge reached his conclusion that the attempted new pleadings were defective without one word from defense counsel concerning the subject. The trial judge's determination was based entirely on the Rules of Judicial Administration, not the Rules of Civil Procedure. All of this is totally omitted from the discussion by the district court of appeal and correspondingly from the majority's discussion in quoting only from that district court opinion.
Faced with this determination and announcement by the trial judge, the new attorney at the hearing then attempted to shift the argument to assert that a different professional corporation listed on the new pleading was a de facto employee of counsel of record. The trial judge quickly rejected this argument, correctly or incorrectly, and reflected that "I'm at a total loss because as of yet, I see nothing to *580 authorize the appearance of" the new attorney. It was not until after this determination had been made that the issue of amending a complaint was even discussed. Thus, the substance of the trial court's concern, correctly or incorrectly, was projected in a sua sponte manner and was based upon the judicial administration rules, not technical compliance with the Rules of Civil Procedure relating to the amendment of pleadings which has now unfortunately become the focus contrary to that which was the focus of the trial court.
Without mention of the foregoing defects or a response to the legal concerns and determination voiced by the trial judge, the new attorney simply proceeded to address the concept of the amendment of a complaint in the abstract, which has unfortunately captured the majority, without regard to the trial court's prior very clear rulings. The substance of the argument, although not directed to the defect found by the trial judge, was legally correct in the abstract, but it did not in any way encompass or address the determinations already made by the trial court, whether correctly or incorrectly, that the attempted amendment was not properly before the court at all based upon the judicial administration rules. In response to the abstract general amendment legal argument, defense counsel offered a short two-paragraph response suggesting that the trial court theoretically had discretion to deny the amendment, albeit based on a prejudice analysis, a response with which neither I nor the majority agree.
However, having previously determined that the conduct and papers filed by the new attorney failed to comply with the requirements of the law as outlined in the Rules of Judicial Administration, the trial judge announced:
The Court is going to do very simply, this. The Court is going to go ahead and hear, as well as rule on the Motion to Dismiss that's pending as to the initial file complaint.
The Court at this time does not recognize the Amended Complaint as filed. That being the case, the Court will go ahead, I'll hear the Motion, I'll hear whatever argument anyone wishes to propose.
After the trial judge had made this determination that the defects and failure to follow the applicable rules required consideration of only the original complaint, the trial judge then centered upon the "crux" and truly fundamental issue before the court which was whether a doctrine of preemption applied to preclude, as a matter of law, the core cause of action in both the original complaint and in any attempted amended complaint and whether a dismissal, if any, would be with or without prejudice. This was the heart of the dispute because even the new attorney stated that he did not oppose a dismissal without prejudice which would allow correction of the existing defects through amendment and a denial of the motion to dismiss would permit the action to remain pending and amenable to proper future amendment. Thus, the fundamental issue addressed by the trial court, which the district court below erroneously concluded could not be presented in a motion to dismiss, was centered upon the doctrine of preemption, not whether preemption could be presented in a motion to dismiss, and the core claim related to the manufactured food product in question, Boca Burger, and whether any dismissal with prejudice would be appropriate. In essence this would determine whether the core claim could ever be amended to present a viable cause of action not preempted by state and federal statutes as a matter of law.
The district court of appeal below and the majority here have refused to consider *581 the fundamental and central issue driving the trial court and the trial court's stated reasoning. The district court of appeal proceeded instead to punish a party and counsel as though this case involved only a simple, clean, and clear properly filed amended complaint in an ordinary and uncontroverted context, which it simply is not. The majority has fallen victim to this defect and designated the trial level proceedings "moot" in its haste to discuss "professionalism" and be on record with regard to those altruistic goals with which one cannot disagree in the abstract. The simple truth is that the trial court did not simply fail to permit a noncontroversial run-of-the mill amendment to an existing action under the Rules of Civil Procedure, but the trial judge sua sponte recognized a multitude of defects and failures to follow the Rules of Judicial Administration, recognized that the core preemption issue remained even if a later amendment were considered, and understood that the determination of the fundamental legal issue concerning preemption, with or without prejudice, might render all of these superficial issues discussed by the majority totally meaningless. The trial judge totally and absolutely rejected the notion, although seized and relied upon by the district court of appeal and perpetuated by the majority here, that this was a simple and routine filing of an amended complaint without leave of court situation which was controlled by Rule 1.190, Florida Rules of Civil Procedure, when he specifically responded to such inquiry:
The Amendment to the Complaint, two hours prior to the hearing, by a counsel who has only filed an appearance today; who has not filed as a co-counsel; there is no signature on the complaint by the only counsel recognized in the case who filed the initial complaint; the representation, even of you, Mr. Miller, that you're co-counsel to Mr. Orlando, who is a phantom to the file, and Mr. Orlando being Michael Orlando, P.A., separate and distinct in the letterhead from Joe Dawson, P.A., who is the counsel of record, yeah, the Court is not going to recognize the Amendment at this point for a multitude and litany of reasons that I've just stated.
The parties then proceeded to discuss the real substantive issue, not the technical procedural niceties with regard to a non-issue of routine amended complaints which has become the majority's focus, as to whether the totality of this core claim related to misrepresentations with regard to a manufactured food product was preempted as a matter of law, rendering the issue and discussion of amendments in the abstract totally irrelevant. The defense, at the specific request of the trial judge, proceeded to set forth its federal and state statutory basis for preemption and asserted that preemption would "go to the heart of" and preclude any action (whether the initial or amended complaint) based upon misrepresentations with regard to the labeling of manufactured food products. The defense clearly advanced the underlying principle and argument that the complaint was not amendable to state any viable cause of action. When provided a full opportunity to respond to the substantive legal issues with regard to preemption, the new attorney did not challenge the manner in which the issue was presented (motion to dismiss) but only offered mere conclusions by simply referring to the amended complaint he had submitted and arguing that "this is a well-grounded Cause of Action," and "creates causes of action that are legitimate and not preempted" without providing the court any legal reasons, authority, or precedent whatsoever. No substantive basis whatsoever was advanced by the "new" counsel. The "argument" was essentially that the doctrine *582 of preemption did not apply simply because the new attorney so stated. This was the entirety of the "argument" in response to the preemption issue. The question seized upon by the district court as to how preemption is to be presented (motion to dismiss or affirmative defense) was never asserted, discussed, or preserved for appellate consideration. See Dober.
The trial court record reflects that in rebuttal, defense counsel merely called attention to his opposition's failure to provide any legal basis or authority whatsoever with regard to preemption and offered that the opposition had not provided a basis to refute "whether or not the claims, as alleged, or even any claims that could be alleged under the purported mislabeling of a product, would in any way withstand the doctrine of preemption." Correctly or incorrectly, the trial judge ruled on the substantive issue that preemption operated to preclude any action centered upon the core claim related to a manufactured food product as a matter of law and that amendment could not overcome application of the doctrine of preemption to form a viable cause of action which caused the entry of a dismissal with prejudice.
As I review the decision of the district court of appeal in this case, in the first paragraph, without reference to or consideration of the Rules of Judicial Administration, the court simply concluded that the trial judge had no discretion or authority to review the new pleading submitted, determined that the attorney would be punished, and then wrote to justify and explain the punishment. In what I perceive to be rapid movement to justify punishment of counsel, the district court below first totally neglected to outline the pertinent material facts in the record and the proceedings in the trial court. It then proceeded to only summarily touch upon one rule of the judicial administration rules while totally ignoring others equally applicable, at least arguably and in the determination of the trial judge. Unfortunately, the majority has fallen victim to the district court's failures because it simply quotes directly from only the district court's opinion rather than analyzing the actual record or the actual proceeding and the actual decisions made by the trial judge, reasoning that all of this is "moot."
First, I believe it is absolutely clear and at least genuinely arguable that it was the trial judge, not defense counsel, who first presented the concerns of judicial administration rule violations, which was totally overlooked and not considered by the district court and is now carried forward by the majority here. Multiple provisions of Rule of Judicial Administration 2.060 may arguably have application to impact the pleadings and proceedings in this case, which the district court approached in only a very conclusory and summary fashion in the march to explain the punishment imposed. The trial court sua sponte recognized, found and determined that violations of judicial rule provisions existed relating to the substitution of counsel, the withdrawal of counsel, or the addition of counsel depending upon the ever-shifting view taken or position asserted by the new attorneys. Correctly or incorrectly, the trial judge voiced sua sponte his findings of violations of rule 2.060, rendering the purported amended pleading a nullity at least at that point in the proceedings as other courts have also determined. I suggest that there was a viable and genuine issue, at least in the eyes of the trial judge, correctly or incorrectly, with regard to compliance with the judicial administration rules which multiple other courts have found to operate to render noncompliant pleadings a nullity. See Hicks v. Hicks, 715 So.2d 304 (Fla. 5th DCA 1998); Pasco County v. Quail Hollow Props. Inc., 693 So.2d 82 (Fla. 2d DCA 1997); Bortz v. *583 Bortz, 675 So.2d 622 (Fla. 1st DCA 1996). How can an order be classified as "patently erroneous" without at least proper consideration of the basis of such order?
Secondly, and probably more importantly, this trial level record reveals that rule 1.190 was not the subject of the trial court's decision. The trial court actually directed its attention to the substantive issue as to whether the doctrine of preemption applied to the core mislabeling claim that would negate any viable cause of action rendering any issue of amendment moot. Although considered misdirected by the district court below, the court did recognize the existence of authority in Florida case law supporting a principle of law that a denial to permit amendment under rule 1.190, which provides the absolute right to amend a complaint, is not error if the complaint (core claim) is clearly not amendable as determined by the trial court here. See Volpicella v. Volpicella, 136 So.2d 231, 232 (Fla. 2d DCA 1962) ("Under [rule 1.190], a party may amend his pleading once as a matter of course at any time before a responsive pleading is served. This rule has not yet been construed as depriving a trial court of discretion to withhold leave to amend a pleading to which no response has been served. The rule does however indicate that a denial of leave to amend in such a case amounts to an abuse of discretion unless a complaint is clearly not amendable.") (emphasis added). This Court has certainly recognized the existence of such Florida authority and the express and direct conflict it creates and has proceeded in this case to accept jurisdiction to resolve the conflict and correctly explain the operation of rule 1.190, with which I totally agree. However, I submit that this resolution should not and does not drive the issue of sanctions being imposed upon counsel when the opinion today addresses the actual or apparent conflict. Disapproval of a prior decision in an opinion issued today cannot be a basis to retroactively sanction counsel for attempting to support the trial judge's order on the basis utilized by the trial judge. The district court of appeal simply seized upon a "straw-man" argument to the exclusion of issues actually decided by the trial judge and imposed sanctions. The majority today approves further consideration of punishment under these circumstances, calling the trial proceedings "moot," even though the reasons announced by the district court for punishment have been rejected.
Thirdly, this Court has today specifically held that a defense of preemption may properly be asserted in a motion to dismiss, rejecting the decision of the district court below on this issue. The substance of the motion to dismiss, preemption, according to the trial court's final dismissal with prejudice, operated to preclude a viable cause of action on the core claim asserted, whether in the original complaint or any purported valid amended complaint. This issue remains undecided, but the majority holds open that counsel may be sanctioned for attempts to uphold the dismissal with prejudice entered by the trial court. It was the trial court, not counsel, that formulated the manner in which it would approach the core claim presented and whether a legal doctrine of preemption applied to preclude that core claim.
I agree with everything the district court of appeal has stated with regard to professionalism, ethical duties and standards in the abstract and also with those subjects as explained in the majority opinion here. I simply cannot and do not agree with the underlying premise as stated by the district court that "[d]efense counsel plainly attempted to lead the trial judge to a result that plaintiff was needlessly forced to appeal" which causes those otherwise correct principles to be misapplied. *584 The transcript of the trial level hearing and the form of the dismissal with prejudice belies the district court's analysis and that of the majority with regard to the Rule of Civil Procedure being the controlling issue in the trial court and demonstrates that the dismissal represented an arguable decision by the trial court on the substance of the core claim and defense, correctly or incorrectly, which remains as an arguable controlling issue. As recognized by the majority, the issue of preemption is fundamental to the power of the court to act and is a question of subject matter jurisdiction that may be raised at any time. In my view, on these facts and Florida law at that time, it was not sanctionable for this attorney to attempt to support the trial judge's decision with regard to the judicial administration rules or to assert a lack of jurisdiction due to preemption as a matter of law. Although the majority proclaims that today it has not punished counsel, it has returned this case to the district court of appeal for consideration to do so tomorrow, a result that is, in my view, incorrect as a matter of law and accompanied by the incorrect concepts that the trial level proceedings are "moot," the propriety of a court's decision is irrelevant to the consideration of punishment of a party due to the position it asserts, and the announced basis of a court's order is unimportant in analyzing whether an order is "patently erroneous." This case has simply become misdirected and should not be remanded for sanctions, but returned to the trial court for the case to proceed.
QUINCE, J., concurs.
NOTES
[1] The amended complaint alleges causes of action under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a)-(c) (2000), the FDUTPA, common law fraud and deceit, breach of contract, and breach of warranty.
[2] The Fourth District also cited Nenow v. Ceilings & Specialties, Inc., 151 So.2d 28 (Fla. 2d DCA 1963), as another of the "earlier cases." Nenow followed Volpicella's holding that the right to amend is not absolute. It interpreted Volpicella as holding that the right terminates upon a judgment of dismissal and that subsequent amendment is committed to the trial court's discretion. Id. at 30-31. In this case, Forum clearly amended the complaint before dismissal, and the Fourth District did not address whether the absolute right to amend the complaint terminates with dismissal. Neither do we.
[3] The third sentence of the rule was added in 2003 and is not at issue in this case.
[4] This approach is consistent with the rationale underlying the "abuse of discretion" standard that governs appellate review of a trial court's decision regarding sanctions. See, e.g., Mercer v. Raine, 443 So.2d 944, 945-46 (Fla.1983) (holding that a trial court's order granting sanctions should be reviewed using an abuse of discretion standard). That rationale emphasizes "the superior vantage point of the trial judge" as "essential to the just and proper application of procedural rules," id., and applies equally to our holding that appellate courts do not have authority to award sanctions for conduct that occurred in the trial court. "[I]t is the responsibility of the trial court, and not the appellate courts, to manage and control the trial process, including the application of sanctions for serious abuses." Tramel v. Bass, 672 So.2d 78, 83 (Fla. 1st DCA 1996).
[5] The State conceded error in the following opinions published since the beginning of 2004: Brown v. State, 893 So.2d 714 (Fla. 1st DCA 2005); Santiago v. State, 893 So.2d 688 (Fla. 5th DCA 2005); Washington v. State, 890 So.2d 1276 (Fla. 5th DCA 2005); King v. State, 891 So.2d 1067 (Fla. 2d DCA 2004); Card v. State, 889 So.2d 175 (Fla. 2d DCA 2004); Walker v. State, 886 So.2d 1007 (Fla. 1st DCA 2004); Long v. State, 886 So.2d 280 (Fla. 1st DCA 2004); Stewart v. State, 884 So.2d 500 (Fla. 5th DCA 2004); Wilson v. State, 884 So.2d 74 (Fla. 2d DCA 2004); Ellis v. State, 881 So.2d 685 (Fla. 5th DCA 2004); B.L.J. v. State, 880 So.2d 1290 (Fla. 3d DCA 2004); Taylor v. State, 880 So.2d 704 (Fla. 2d DCA 2004); Hansell v. State, 879 So.2d 646 (Fla. 1st DCA 2004); McGill v. State, 878 So.2d 1270 (Fla. 5th DCA 2004); Washington v. State, 876 So.2d 1242 (Fla. 2d DCA 2004); Williams v. State, 876 So.2d 27 (Fla. 1st DCA 2004); McGough v. State, 876 So.2d 26 (Fla. 1st DCA 2004); Turner v. State, 875 So.2d 731 (Fla. 2d DCA 2004); Demps v. State, 874 So.2d 737 (Fla. 4th DCA 2004); Johnson v. State, 873 So.2d 558 (Fla. 1st DCA 2004); Carmona v. State, 873 So.2d 348 (Fla. 5th DCA), review denied, 888 So.2d 17 (Fla.2004); Botarf v. State, 867 So.2d 1280 (Fla. 5th DCA 2004); Henderson v. State, 867 So.2d 641 (Fla. 4th DCA 2004); Bakarania v. State, 867 So.2d 638 (Fla. 5th DCA 2004); Washington v. State, 867 So.2d 626 (Fla. 2d DCA 2004); Frett v. State, 864 So.2d 577 (Fla. 2d DCA 2004).
[6] Since the beginning of 2003, the following civil cases have been published in which the appellee conceded error: Torres v. Serv. Mgmt. Sys. & Gallagher Bassett Servs., Inc., 890 So.2d 1239 (Fla. 1st DCA 2005); Sherwood v. Quietwater Entm't, Inc., 888 So.2d 734 (Fla. 1st DCA 2004); Alpert v. Alpert, 886 So.2d 999 (Fla. 2d DCA 2004); Houchins v. State Farm Ins. Co., 881 So.2d 62 (Fla. 4th DCA 2004); Dellicarpini v. Kerr, 873 So.2d 536 (Fla. 4th DCA 2004); Gundotra v. Gundotra, 859 So.2d 533 (Fla. 4th DCA 2003), review dismissed, 872 So.2d 899 (Fla.2004); Christ v. Christ, 854 So.2d 244 (Fla. 1st DCA 2003); Burton v. Burton, 851 So.2d 861 (Fla. 5th DCA 2003); Yorke v. Yorke, 848 So.2d 1215 (Fla. 1st DCA 2003); Low Cost Auto Pawn, Inc. v. Greco, 851 So.2d 768 (Fla. 2d DCA 2003); Am. Home Assur. Co. v. Rosen Bldg. Supplies, Inc., 854 So.2d 666 (Fla. 3d DCA 2003); Channel 68 Marina, Inc. v. Gilliams, 842 So.2d 1017 (Fla. 4th DCA 2003); Harris v. Kelly, 835 So.2d 1262 (Fla. 1st DCA 2003).
[7] We note, however, that the dissent has not eliminated every basis upon which the trial court could impose sanctions. It is unclear whether counsel acted in good faith when it opposed the amendment of the complaint without leave of court, citing an inapplicable federal district court case from Michigan, which involved the federal rather than Florida rules of civil procedure, and an inapplicable Florida district court case, in which the trial court's denial of leave to amend an answer was reversed as an abuse of discretion. See Forum, 788 So.2d at 1058 (citing Horal, 667 So.2d at 967). Although Volpicella, 136 So.2d at 232, arguably might have lent some support to counsel's position, we see no evidence that counsel relied on that case at the trial court level. Because we have quashed the district court's order, we have not focused on counsel's argument on this issue.