# Third District Court of Appeal

**State of Florida**

Opinion filed November 1, 2017.

_____

No. 3D16-1419
Lower Tribunal No. 15-6691
_____

**Gilberto Sarfaty,**
Appellant,

vs.

**In Re: M.S.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Celeste Hardee Muir, Judge.

Ross & Girten, and Lauri Waldman Ross and Theresa L. Girten; Dunwody White & Landon, P.A., and Jeremy P. Leathe; Markowitz, Ringel, Trusty & Hartog, P.A., and Joshua Rosenberg and Candis Trusty, for appellant.

Akerman LLP, and Gerald B. Cope, Jr., Richard C. Milstein and Dale Noll, for appellee.

Before ROTHENBERG, C.J., and SALTER and EMAS, JJ.

ON MOTION FOR REHEARING OR CLARIFICATION

SALTER, J.

We grant in part the appellee's motion for rehearing or clarification, withdraw our opinion issued May 10, 2017, and substitute the following opinion in its place.

Gilberto Sarfaty appeals the dismissal (without leave to amend) of his petition to determine incapacity of his adult brother, M.S. We reverse the order of dismissal and remand the guardianship case to the circuit court for further proceedings.

The Petition and Psychological Assessment Report Attached to the Petition

The verified petition alleged that 46-year-old M.S. is incapacitated and has been incapacitated his entire life. The petition attached a psychological assessment of M.S. prepared by a South Florida consulting psychologist[1] prepared six months before the petition was filed. The assessment was based on personal clinical interviews of M.S., an interview of the petitioner, and cognitive evaluation tests. The assessment included background information that M.S. was diagnosed with intellectual disability secondary to neurocognitive deficits as a child in his native Peru. M.S. attended specialized training programs in Massachusetts and New Haven, Connecticut, for the development of independent living and work skills.

The verified petition and attached assessment report stated that M.S. lives in a condominium in Aventura and receives assistance from a Peruvian aide and her

_____

[1] Dr. Toomer, a Ph.D. psychologist and diplomate of the American Board of Professional Psychology.

2

husband with activities such as shopping, participating in a support group for outings such as movies, and keeping appointments. The psychologist reported that M.S.'s executive functioning "requires ongoing functional support," and that his sister in New York City manages M.S.'s access to money. The assessment report further stated:

> Given these deficits, [M.S.] will require supervision in terms of managing his affairs, including health, finance, self-care and any business decisions. When questioned regarding his role in family business affairs, [M.S.] had no answer and indicated that he did not know. [M.S.] is unable to comprehend issues related to assets and liabilities, corporate structure and organization, division of shares, power of attorney, voting rights, etc., and other issues related to financial management. This deficit places him at risk for financial exploitation. [M.S.] lacks informed decision making capacity and is in need of assistance in the overall management of affairs and monitoring of his executive functioning capacity.
>
> Summarily, the evaluation of [M.S.] reflects the existence of pronounced personal, psychological and cognitive/intellectual deficits that augment his degree of susceptibility to undue influence. His poor capacity to resist suggestions would adversely impact upon his accurate perception of events and circumstances and render an informed decision. His inability to navigate situations and circumstances that require abstract and/or complex reasoning ability precludes his acting in a knowing, intelligent and voluntary manner.

The verified petition further alleged that M.S.'s cognitive deficits have left him "susceptible to exploitation and undue influence." The petitioner attached powers of attorney executed by M.S. in favor of any one of four family members (the petitioner, M.S.'s brother, Gilberto Sarfaty; M.S.'s mother, a resident of Paris, France, Jeannette Sarfaty; and M.S.'s two sisters: Susie Sarfaty, a resident of New

3

York City, and Lisette Sarfaty, a resident of Lima, Peru).  The verified petition alleged that these powers of attorney had been utilized by M.S.'s sisters and mother to transfer M.S.'s shares in a family-controlled business from voting to non-voting status, in breach of their fiduciary duty to M.S.  Corporate documents evidencing authority purportedly conferred by M.S. for corporate action were also attached to the petition.  The petition complied with the statutory requirements of section 744.3201, Florida Statutes (2015).

The verified petition sought a plenary guardianship and the appointment of a "professional guardian"—not the petitioner or other family member of M.S.—to serve as plenary guardian of the person and property of M.S.  In a matter of days following the filing of the verified petition and those attachments, the mental health division of the probate division of the Miami-Dade circuit court issued a standard order (signed by the circuit judge) appointing three credentialed and independent mental health professionals to serve as the examining committee for M.S. as the "allegedly incapacitated person" or "AIP."  In that order, the court also appointed an independent attorney to serve as counsel for M.S. and "to represent the AIP in all proceedings involving the verified petition."[2]  The order further

---

[2]  In the event of an adjudication of incapacity, the court-appointed attorney for the AIP was also directed to review the initial guardianship report and to represent the ward during any objection to that report.

4

specified that the court-appointed attorney "may not hereafter serve as guardian, nor as the guardian's counsel."

Private Counsel for M.S.

The attorneys for the petitioner/brother of M.S., Gilberto Sarfaty, and M.S. himself, promptly notified M.S.'s mother, two sisters, and M.S.'s aides of the commencement of the guardianship and the fact that the petitioner sought an independent guardian for M.S. In less than ten days from the service of the circuit court's form order appointing the examining committee and independent, court-appointed counsel, the other family members retained counsel and appeared in the case.

Of particular note, and as detailed in the attached time line, attorneys and their law firm purporting to be appearing on behalf of M.S.—not M.S.'s mother or sisters, but M.S., the allegedly incapacitated person himself—immediately appeared in the case and moved to be substituted for the independent, court-appointed attorney representing M.S.[3] That motion was signed by M.S. himself.

The independent, court-appointed attorney for M.S. was concerned that, though M.S. "**may** substitute her or his own attorney for the attorney appointed by the court, this is not an absolute right and certain factors must be taken into

_____

[3] M.S.'s motion for substitution of counsel was filed on December 18, 2015—15 days after the petition was filed, and only seven days after the circuit court's order appointing the examining committee and court-appointed attorney was served by mail.

5

consideration when allowing this substitution."[4] (Emphasis in the original). The court-appointed attorney expressed concern regarding M.S.'s capacity, based on M.S.'s life-long medical history, the verified allegations in the petition, and the pre-petition assessment report of Dr. Toomer attached to the petition. The objections noted uncertainty as to who actually hired private counsel for M.S., and suggested that the court assure that private counsel for M.S. "is a disinterested third party, with [M.S.'s] best interests in mind." The court-appointed attorney did not, however, press for an evidentiary hearing on her objections.

The day after the objections were filed, the circuit court entered two orders. The first found that M.S. is not indigent and ordered reassignment from the Office of Criminal Conflict and Civil Regional Counsel "as soon as we have resolved the issue of who should be the successor court-appointed attorney," and a second order granted private counsel's emergency petition to be substituted in place of the initially-appointed independent counsel.

Stipulation for Continuance; M.S.'s Motions to Strike and to Dismiss

The circuit court's standard order of December 10, 2015 (served by mail the following day), scheduled the adjudicatory hearing on the petition for January 13, 2016. But on January 6, 2016, counsel for all of the interested persons and for

_____

[4] § 744.331, Fla. Stat. (2016). See also Holmes v. Burchett, 766 So. 2d 387, 388 (Fla. 2d DCA 2000) (AIP presumed competent to contract and retain counsel of his or her choice unless and until it has been proven, based on clear and convincing evidence, that the AIP is incapacitated with respect to the exercise of that right).

6

M.S. stipulated to a motion for continuance of that hearing because of scheduling conflicts and ongoing settlement negotiations. The court granted the joint motion and directed counsel to coordinate a later date for the hearing on the petition to determine incapacity.

As of January 7, 2016, M.S. was represented by his private counsel, and the original, court-appointed attorney terminated her services on behalf of M.S. On January 13, 2016, M.S.'s private counsel filed a declaration that the petition for a determination of incapacity was adversary. Although M.S.'s court-appointed counsel had begun seeking information from the petitioner's counsel regarding access to M.S. in December, and although M.S.'s mother and M.S.'s private counsel were present during a December 29, 2015, interview with Dr. Echavarria of the Examining Committee, M.S.'s private counsel next moved to dismiss the petition for procedural reasons. The motion to dismiss, filed January 20, 2016, asserted that M.S. "has been consistently denied the due process and procedures required in these proceedings," that the petition is "fatally flawed," and that the relief requested is "barred by the doctrines of unclean hands and estoppel."

The following day, M.S.'s private counsel filed a notice to require in person testimony of the three examining committee members, and a motion to strike all three examining committee member reports (each of which had recommended a

7

limited guardianship based on M.S.'s inability to make informed decisions regarding a majority of the 13 categories assessed in the report).

<u>Hearing and Dismissal Without Leave to Amend</u>

Private counsel for M.S. amended the motion to dismiss[5] on April 26, 2016, and the motion was heard a week later. The hearing was non-evidentiary, and the thrust of the movants' objections were (a) the alleged failure of court-appointed counsel to read the petition and form notice to M.S., and (b) the fact that the examining committee members did not file their reports within the fifteen day period allowed by the form notice and section 744.331(3)(e), Florida Statutes (2016). Private counsel for M.S. also addressed the alleged merits of the petition, moving beyond the four corners of the petition and its attachments. During that hearing, as here, private counsel for M.S. argued that less restrictive alternatives to guardianship should be considered—including a guardian advocate under section 393.12, Florida Statutes (2016), [6] and a petition under section 709.2116, Florida

---

[5] The amended motion to dismiss, like the original, was joined by M.S.'s Mother and both sisters.

[6] The day after the notice of appeal was filed in this case, private counsel for M.S., joined by counsel for family members other than the petitioner in the present case, executed a separate petition for the appointment of one of those family members as a limited guardian advocate for M.S. When the petitioner in the present case (M.S.'s brother) sought leave to intervene in that case, M.S.'s counsel opposed, and moved to strike, that motion. The trial court granted the motion and has recognized Gilberto Sarfaty as an interested party.

Statutes (2016), for judicial relief regarding any alleged conflict of interest relating to the execution of powers of attorney by M.S. or family members.

Counsel for the petitioner argued that M.S.'s private counsel had stepped into the shoes of counsel for M.S., with the ability and duty to read the petition to him, explain its consequences, and assist him with scheduling timely meetings with the examining committee members so that their reports could be timely filed.[7] The court determined, however, that the proceedings needed to begin anew and that the petitioner would not be allowed to amend the petition. The court expressed the well-intentioned hope that the family members might be reconciled and avoid the expense of further proceedings, though recognizing that the dismissal was "unusual." The present appeal followed.

Analysis

Our standard of review for an order granting the dismissal of a petition without leave to amend is de novo. We review the allegations within the four corners of the petition and its attachments, assume them to be true, and construe all reasonable inferences from those allegations in favor of the petitioner. Greene v. Times Publ'g Co., 130 So. 3d 724, 728 (Fla. 3d DCA 2014); Lonestar Alt. Sol.,

---

[7] As private counsel assuming the representation of M.S., it was counsel's professional obligation to help M.S. understand the petition so as to mount a defense to the allegations in the petition (if that was M.S.'s informed decision). As already noted, M.S. signed the motion to substitute private counsel, and private counsel was present at each of the three assessment meetings between examining committee members and M.S.

9

Inc. v. Leview-Boymelgreen Soleil Developers, LLC, 10 So. 3d 1169, 1172 (Fla. 3d DCA 2009).

The order of dismissal, and the oral ruling that amendment would not be allowed, are grounded on (1) an alleged failure of due process; (2) the allegedly untimely filing of the examining committee member reports; and (3) the objection by the initial, court-appointed counsel to the appointment of M.S.'s private counsel, alleged to have been prejudicial to M.S.[8]  While these arguments may constitute defenses to the petition, they fail to establish the legal insufficiency of the petition.  They are also circular arguments because of the unusual procedural developments in the case.

Within days of independent, court-appointed counsel's receipt of the standard order appointing her, M.S. had signed a paper prepared by his proposed, private counsel asking that court-appointed counsel be discharged.  This occurred because counsel for the petitioner immediately (and properly) disseminated the petition and its attachments electronically to M.S.'s family members.  M.S., his mother, and his two sisters then immediately hired four separate Miami law firms to represent them.[9]  As soon as private counsel was substituted for court-appointed

---

[8]  All other motions, including M.S.'s motions to strike the examining committee reports, were held to be moot in the order of dismissal.

[9]  According to the petition and its attached assessment by Dr. Toomer, M.S. only has access to a small amount of money managed by his sister, who resides in New York.  "Finances are controlled and managed by family members."  The petition

10

counsel, the normal urgency in guardianship cases apparently diminished, because all counsel stipulated to the continuance of the originally-set evidentiary hearing.

In light of this unusual record, M.S.'s reliance on strict adherence to the time and notice requirements in section 744.331(3)(e) and in the circuit court's standard notice and order mailed December 11, 2015, is not persuasive; M.S.'s own counsel and his family could have immediately asked the Court (but did not) to defer the examining committee member assessments, or to expedite them. Instead, counsel for M.S. made him available for the examining committee member examinations and sat with M.S. as each professional assessed M.S. M.S. now complains of actions not taken by the court-appointed attorney he petitioned to discharge, and then purportedly not taken by his own private counsel.

We have identified no Florida case holding that the timing set forth in the statute cannot be waived by an AIP or the AIP's private counsel. Nor have we identified a case holding that the timing set forth in the statute is so significant to the process and parties that a petition must be dismissed, without leave to amend, if the time requirements are not strictly fulfilled.[10]

---

alleged that M.S. owns assets exceeding millions of dollars but has no ability to understand or manage the funds. M.S.'s ability to retain his private counsel would seem to have required assistance from the very family members alleged in the petition to have conflicts of interest in the use of powers of attorney presented to M.S. for his execution.

[10] It bears noting that the standard order appointing independent counsel and the three examining committee professionals was served by mail on December 11th, with the deadlines falling during the end-of-year holidays.

Instead, M.S. and three family members persuaded the trial court months later that substantial compliance with the statute and rule were insufficient, citing such cases as In re Fey, 624 So. 2d 770 (Fla. 4th DCA 1993), and Borden v. Guardianship of Borden-Moore, 8181 So. 2d 604 (Fla. 5th DCA 2002). Although In re Fey holds that "compliance with section 744.331 and rule 5.550 is mandatory," 624 So. 2d at 772, the non-compliance in that case involved the failure to appoint independent counsel for the AIP until "the commencement of the final hearing," "long past the pleadings and trial preparation stage." Id. No such failure occurred in the present case, in which the court's initial order, mailed only days after the petition was filed, appointed independent counsel and the members of the examining committee. And no final hearing has begun, much less occurred, in this case.

Similarly, in Borden, the AIP's daughter (who had petitioned for a determination that her mother was incapacitated) and the AIP's court-appointed independent attorney were not notified of a hearing on a motion by the AIP's husband. "The hearing was not recorded, no examining committee reports were considered because the examining committee had not yet completed the required examinations, and [the AIP's] court-appointed attorney did not participate because he was not notified of the hearing." 818 So. 2d at 606. Nevertheless, at the

conclusion of that hearing, the trial court found that the AIP was competent and dismissed the petition.  Id.

Unsurprisingly, the Fifth District in Borden reversed the order of dismissal, based on the lack of any notice to the petitioner and the AIP's counsel.  In doing so, that court also found that the trial court should not have dismissed the facially sufficient petition without considering examining committee reports and conducting an adjudicatory hearing.  These were the flagrant departures from the mandatory requirements of section 744.331 in Borden.  What occurred in the present case—a few days of delay in the filing of the examining committee member reports during the end-of-year holiday season, following a change in counsel sought by the AIP himself—is entirely distinguishable.

The Dissent

Our dissenting colleague argues forcefully that the order below must be affirmed because of "fundamental error" regarding the petition and the fact that the initial, court-appointed attorney "completely ignored her duties as Elisor . . . ." Dissent, slip op. at 25.  A brief and specific response is appropriate.

No fundamental error occurred.  What occurred is unique to the present case and is not a feature of any of the statutes, rules, or cases relied upon by the appellees and our colleague.  That occurrence is that the court-appointed attorney and elisor, Ms. Valdes, was served by mail on December 11, 2015, with the order

13

appointing her.[11]  Over a week before the deadline for her to read the petition to M.S., Ms. Valdes had already been served with an emergency petition for her substitution by M.S.'s current counsel, and the petition was signed by M.S. himself.  Surely the dissent and M.S.'s current counsel cannot be suggesting that M.S. signed the motion for substitution without reading the copy of the notice mailed to him, or another copy provided by his chosen private counsel, or having it read to him by his personal counsel.  As no evidentiary hearing has been held on this point (or on any other issue in the case), the record does not establish that the notice was not read to M.S. as provided by Florida Probate Rule 5.550(b)(2).

The attached time line demonstrates that Ms. Valdes sought information from petitioner's counsel regarding access to M.S. on December 26, 2015, which is over a week after M.S.'s personal counsel had begun advising M.S.  Ms. Valdes's time records, which are in the record, refer to an email and a letter from M.S.'s personal counsel as early as December 18, 2015.  Thereafter, (1) the court granted the motion for substitution of counsel, and (2) M.S.'s private counsel, not Ms. Valdes, attended the meetings with M.S. and each of the three members of the examining committee, and (3) a scheduled adjudicatory hearing was continued by

_____

[11]  That this is not a "lack of notice" case is further illustrated that the certificate of service by mail by the Deputy Clerk also certifies that a copy of the order of appointment and the petition itself were mailed to the petitioner (Gilberto Sarfaty), M.S. himself, his family members indicated in the petition, all attorneys of record, and each member of the examining committee on December 11, 2015.

14

agreement among counsel. Any error which occurred in moving the petition toward an adjudicatory hearing was not a fundamental error (of the kind apparent in the reported cases), but rather an invited error.

Turning next to the examining committee reports, apparently the appellees and the dissent would allow dismissal of a petition without leave to amend if a single examining committee report was filed a single day after the 15-day period allowed in section 744.331 (3)(e). Such a draconian interpretation must be rejected after considering the express purpose of the statute and rule—providing the AIP and parties sufficient time before an adjudicatory hearing to understand and contest the reports if that is considered appropriate. No case has held that missing the 15-day period by a few days warrants dismissal of the petition without leave to amend.

The dissent's quotations from Fey and Borden have already been addressed in this opinion—a broadly-written statement in Borden that "[c]ompliance with the requirements of section 744.331 is mandatory and the trial court's failure to adhere to those requirements constitutes reversible error," 818 So. 2d at 609, was not referring to an AIP represented by his own counsel after the AIP signed a motion and apparently authorized the filing of numerous pleadings, or to an AIP whose counsel attended his meetings with all members of the court-appointed examining committee (as occurred in the present case).

15

Rather, Borden involved a petitioner who was given "*no* notice, reasonable or otherwise, that dismissal of the incapacity proceedings would be considered by the court" at a hearing, when: dismissal had not even been sought by an adverse party; an attorney appeared on behalf of the AIP without obtaining an order of substitution for the court-appointed attorney; no court reporter recorded the proceedings; and the court dismissed the petition having never obtained the examining committee's report. Id. at 607-609. Those are the departures from the statute and rules referred to by the Fifth District in Borden, not the fact that the examining committee reports were a few days late, or that successor counsel for the AIP criticized the court-appointed counsel's failure to read the initial notice to the AIP (following the delivery to the AIP of copies of both the petition and the notice).

Another case cited by the dissent for the principle that proceedings to determine competency must strictly comply with the statute, Rothman v. Rothman, 93 So. 3d 1052, 1054 (Fla. 4th DCA 2012), ordered dismissal of a guardianship petition because two of three examining committee members concluded that the AIP was not incapacitated. The trial court had granted the petition, despite the fact that the statute requires dismissal of the petition if a majority of the examining committee members conclude that the alleged AIP is not incapacitated. This is in sharp contrast to the present case, in which all three of the independent examining

16

committee members concluded that M.S. could not make informed decisions in a majority of categories assessed, such that a limited guardianship is appropriate. And these three reports followed a similar evaluation by Dr. Toomer, discussed earlier and detailed in a written report attached to the verified petition.

Similarly, the dissent's citation to Adelman v. Elfenbein, 174 So. 3d 516, 518 (Fla. 4th DCA 2012), for propositions that the guardianship statutes must be strictly construed and that failure to adhere to the requirements of section 744.331 constitutes fundamental error, must also be considered against the record in that case. Adelman involved two separate petitions by a grand-niece for the appointment of a plenary guardian for the petitioner's great uncle. In the first, the trial court dismissed the petition after determining that the AIP's advance directive documents "provided a less restrictive alternative to guardianship." The petitioner/grand-niece did not appeal those final orders.

"Several months later, the grand-niece filed a 'petition to reopen' the guardianship," and the trial court conducted a trial and appointed a professional plenary guardian for the AIP. Id. at 517. The Fourth District found that the trial court lacked jurisdiction to enter the order because the petition to reopen the case "is not premised on any rule or statute, and Appellee cites no statutory authority to reopen an incapacity proceeding where no guardianship was ordered." Id. at 518.

No such lack of jurisdiction and complete absence of statutory authority is evident in the record in the present case. The dissent's reliance on Adelman is misplaced.

Finally, the dissent cites a case involving defects in personal service and due process. The issue of the sufficiency of service in the present case is readily resolved through an evidentiary hearing, if truly in doubt, rather than summary dismissal without leave to amend. There is abundant evidence that the petition was delivered to M.S. His counsel has not denied, in promptly appearing with the consent of M.S. to defend his interests, that counsel discussed the verified allegations in the petition with him. This is a far cry, in short, from a plaintiff's attempt to accomplish service by mailing the summons and complaint to a corporate employee "at the private mailbox registered to the corporation" (versus the registered homestead address in Florida of the corporate principals), in the case cited by the dissent. McDaniel v. FirstBank Puerto Rico, 96 So. 3d 926, 929 (Fla. 2d DCA 2012).

Conclusion

The petition and its attachments are facially sufficient to allege that M.S. is incapacitated. We thus reverse the trial court's dismissal of the petition without leave to amend,[12] and remand with direction to permit the petitioner to amend the

---

[12] M.S. has not answered the petition; his amended motion to dismiss, after declaring the petition an adversary proceeding, is not a "responsive pleading" for purposes of the petitioner's "absolute right to amend the complaint before a responsive pleading is served." Boca Burger, Inc. v. Forum, 912 So. 2d 561, 567

18

petition, should he choose, and to permit M.S. and the other co-respondents to raise such defensive matters as each may consider appropriate.[13]   M.S.'s motions to require in-person testimony of the examining committee members and to strike the examining committee reports were dismissed as moot rather than heard and determined; if renewed, those motions may be heard before the adjudicatory hearing.

Reversed and remanded for further proceedings.

EMAS, J., concurs.

---

(Fla. 2005).

[13]   M.S., through his private counsel, is already deemed to have denied the allegations within the petition.  Fla. Prob. R. 5.550(b)(2).

| Timeline | |
|---|---|
| | |
| December 3, 2015 | Petition to determine incapacity filed by Gilberto Sarfaty [Attachments: Psych. Assessment of M.S. as of June 1, 2015. 2014, 2015 Powers of Attorney and Peruvian Corporate Documents] |
| | |
| December 10, 2015 | Probate Division Mental Health Section standard notice and order: appointing examining committee and court-appointed attorney for M.S.; setting hearing for Jan. 13, 2016. Served by mail December 11, 2015. |
| | |
| December 16, 2015 | Appearance of counsel for Jeannette Sarfaty |
| | |
| December 17, 2015 | Appearance of counsel for Susy Sarfaty |
| | |
| December 18, 2015 | Appearance of private counsel for M.S. and emergency petition for substitution of court-appointed counsel, signed by M.S. on Dec. 17, 2015 |
| | |
| December 22, 2015 | Appearance of Counsel for Lisette Sarfaty |
| | |
| December 26, 2015 | Court-appointed counsel contacts petitioner's counsel to seek access to M.S. |
| | |
| December 29, 2015 | Dr. Echavarria, Examining Committee Member, assesses M.S. with M.S.'s mother (Jeannette Sarfaty) and private counsel for M.S. present [Reports that M.S. is developmentally disabled; recommends a limited guardianship and concludes that M.S. cannot make informed decisions re: contracts or assist in the defense of suits against him] |
| | |

| | |
|---|---|
| January 5, 2016 | Dr. Alvarez, Examining Committee Member, assesses M.S. with M.S.'s mother (Jeannette Sarfaty) and private counsel for M.S. present [Dr. Alvarez reports that M.S. cannot discuss his finances and needs help managing his finances, medical and legal matters; recommends a limited guardianship and concludes that M.S. cannot make informed decisions re: contracts or assist in the defense of suits against him] |
| | |
| January 6, 2016 | Court-appointed counsel files an objection to M.S.'s private counsel's motion for substitution of counsel [Noting Dr. Toomer's psychological assessment and M.S.'s inability to understand contractual and financial matters; noting uncertainty as to who hired private counsel] |
| | |
| January 7, 2016 | Court finds M.S. is not indigent and orders reassignment from Office of Criminal Conflict and Civil Regional Counsel "as soon as we have resolved the issue of who should be the successor court-appointed attorney" |
| | |
| January 7, 2016 | Order granting private counsel's emergency petition to be substituted in place of court-appointed counsel for M.S. |
| | |
| January 8, 2016 | Dr. Picuric, Examining Committee Member, assesses M.S. with M.S.'s mother and private counsel for M.S. present [Dr. Picuric reports that M.S. "is severely limited in his ability to comprehend abstract and complex concepts" and "[t]hese deficits render him vulnerable to undue influence and financial exploitation;" recommends a limited guardianship] |
| | |
| January 20, 2016 | M.S.'s motion to dismiss the petition, filed by private counsel |
| | |

| | |
|---|---|
| January 21, 2016 | M.S.'s motion to strike all three examining committee reports (filed by private counsel) |
| | |
| January 21, 2016 | Notice that proceedings are adversary (filed by M.S.'s private counsel) |
| | |
| January 21, 2016 | Notice that M.S. requires in person testimony of examining committee members |
| | |
| April 26, 2016 | Amended motion to dismiss the petition (filed by M.S.'s private counsel) |
| | |
| May 3, 2016 | Hearing on the amended motion to dismiss |
| | |
| May 6, 2016 | Order granting M.S.'s amended motion to dismiss |
| | |

ROTHENBERG, C.J. (dissenting).

Florida's guardianship law establishes very specific and detailed procedures which must be followed to determine incapacity, including but not limited to the giving of notice, providing independent counsel, the appointment of a committee to examine the alleged incapacitated person, and the setting of the time limitations for the filing of the examining committee reports. Because many of those requirements were not satisfied in this case, the probate court correctly dismissed the guardianship petition without prejudice for the filing of a new petition.

**THE NOTICE REQUIREMENTS**

With regard to notice to the alleged incapacitated person after a petition to determine incapacity is filed, section 744.331, Florida Statutes (2015), provides:

> (1) NOTICE OF PETITION TO DETERMINE INCAPACITY.—Notice of the filing of a petition to determine incapacity and a petition for the appointment of a guardian if any and copies of the petitions **must be served on and read to the alleged incapacitated person**. The notice and copies of the petitions must also be given to the attorney for the alleged incapacitated person, and served upon all next of kin identified in the petition. . . .

(bolded emphasis added).

Florida Probate Rule 5.550(b)(2), entitled Petition to Determine Incapacity, provides in relevant part:

> *Service on Alleged Incapacitated Person.* The notice and a copy of the petition to determine incapacity **shall be personally served by an elisor appointed by the court**, who may be the court appointed counsel for the alleged incapacitated person. The **elisor shall read the notice to the alleged incapacitated person**, but need not read the petition. A **return of service shall be filed by the elisor certifying that the notice and petition have been served on and the notice read to the alleged incapacitated person**. No responsive pleading is required and no default may be entered for failure to file a responsive pleading. The allegations of the petition are deemed denied.

(bolded emphasis added).

An "elisor" is a person appointed by the court to perform a specified duty. *Elisor*, Black's Law Dictionary (9th ed. 2009).

On December 3, 2015, Gilberto Sarfaty ("Gilberto") filed a petition seeking a determination that his forty-six year old brother, M.S., is incapacitated and the appointment of a plenary guardian for M.S. The petition alleges that M.S. is incapacitated due to "comprehension disabilities" that have existed M.S.'s entire life. M.S. lives in Aventura, Florida; Gilberto lives in Lima, Peru; M.S.'s mother lives in Paris, France; and M.S.'s sisters live in New York City and Peru.

On December 9, 2015, the probate court issued a Notice and Order which: (1) appointed a three member committee to examine M.S.; (2)

24

appointed a general magistrate to conduct hearings and make recommendations to the probate court; (3) appointed Irama Valdes to represent M.S. as M.S.'s attorney; and (4) appointed Ms. Valdes as the Elisor. The Notice and Order specifically instructed Ms. Valdes to personally serve M.S. with the Notice and the petition and, thereafter, to file a return of service within fifteen days from the date of the Notice and Order certifying that the Notice had been read to M.S.

The portions of the Notice and Order relevant to the appointments of Ms. Valdes as M.S.'s attorney and as the Elisor provides as follows:

> This cause having come before the Court on a petition to **(determine incapacity of) and/or (appoint a guardian for)** the above-named Respondent, the Court hereby NOTIFIES the Petitioner, the Respondent (an alleged incapacitated person [M.S.], the Respondent's known next of kin, and all attorneys of record that the following has been ADJUDGED:
> . . . .
>
> 2. **Court Appointed Attorney**
> Irama Valdes
> 19 W. Flagler St.
> Miami, FL 33130
>
> a member of the Florida Bar in good standing, whose telephone number(s) is/are (305) 358-1771 hereby appointed counsel to and will represent [M.S.] in all proceedings involving the Petition to Determine Incapacity and Appointment of Guardian, and, if there is an adjudication of incapacity, said counsel shall review the initial guardianship report and shall represent the Ward during any objection thereto. The appointed counsel may not hereafter serve as guardian, nor as the guardian's counsel. This appointment

may be terminated, per court order, if [M.S.] seeks to substitute his or her own counsel for the counsel herein appointed. Appointed counsel will be compensated for services rendered to [M.S.] pursuant to Florida Law.

3. Service by Elisor

**[M.S.'s] above-named court appointed attorney is also appointed Elisor in this matter**. The Elisor shall personally serve this notice and the petition(s) filed herein on, and read the notice to, [M.S.]. The Elisor shall file a return of service, no later than fifteen (15) days from the date of this Order, certifying that the notice and petition(s) have been served, and that the notice has been read to, [M.S.].

(emphasis added in paragraph 3).

The Notice clearly appoints Ms. Valdes to serve in two different capacities: (1) as appointed counsel to represent M.S. unless and until private counsel is substituted to represent M.S.; and (2) as the Elisor, who is charged with the responsibility to serve and read the Notice to M.S. and, thereafter, to file a return of service no later than fifteen days from the date of the Notice, certifying that the Elisor has served the petition and Notice on M.S. and that she read the Notice to M.S. Ms. Valdes was thus required to file a return of service by December 28, 2015.[14]

It is undisputed that Ms. Valdes completely ignored her duties as the Elisor and the directives of the probate court's Notice and Order, as well as

---

[14] The fifteen-day deadline was extended to December 28, 2015, due to the Christmas holiday.

Florida Probate Rule 5.550(b)(2) and section 744.331(1). She did not serve the petition or Notice on M.S.; read the Notice to M.S.; or file a return of service in the probate court by December 28, 2015. In fact, she has not to this day performed these court-ordered and statutory duties.

It is also undisputed that, although the probate court ultimately granted M.S.'s motion for substitution of Ms. Valdes with privately retained counsel to represent M.S. as his attorney, M.S. never sought, and the probate court has never granted, a motion to discharge Ms. Valdes as the Elisor.

## THE EXAMINING COMMITTEE REQUIREMENTS

As with the notice provisions already addressed, section 744.331(3)(e) is written in mandatory language and states that "[e]ach member of the examining committee must submit a report within 15 days after appointment." Additionally, the Notice and Order places a similar requirement on each member of the examining committee:

> At least five (5) days before the hearing, or within fifteen (15) days of the date of this Order, whichever is earlier, a written report that confirms [sic] to the requirements of section 744.331, Florida Statutes, must be filed with the Clerk of this Court with copies sent to [M.S.], the Petitioner, and all attorneys of record.

Again, it is undisputed that none of the committee member's reports were filed within the fifteen days mandated by the probate court's Notice and Order and section 744.331(3)(e).

**M.S.'S OBJECTIONS TO THESE PROCEDURAL DEFECTS**

The record reflects that M.S. immediately and repeatedly objected to the above procedural defects, alleged that his due process rights were violated, and alleged that he was prejudiced. The record reflects the following.

The petition to determine incapacity was filed by Gilberto on December 3, 2015. On December 10, 2015, the probate court issued its Notice and Order appointing Ms. Valdes as counsel for M.S.; appointing Ms. Valdes as Elisor; appointing an examining committee; appointing a general magistrate; setting the requirements for the service and notice to M.S.; setting the time limitations related to the notice to M.S., the filing of the return of service, and the filing of the committee members' reports; and setting the hearing date for January 13, 2016.

On December 18, 2015, M.S.'s privately retained counsel, Richard C. Milstein and R. Dale Noll (collectively, "private counsel"), filed an emergency petition for substitution of counsel, which was signed by Richard Milstein and M.S. This petition specifically noted that although the petition to determine incapacity had been filed on December 3, 2015, as of the filing of the petition for substitution of counsel, M.S. had not been notified of the name of his court-appointed counsel. On December 18, 2015, private

counsel also filed an emergency motion for authorization to review and copy the court file.

On January 7, 2016, the probate court granted the petition for substitution of counsel and the motion for authorization to review and copy the court file. The court also entered an agreed order continuing the January 13, 2016 hearing on the petition to determine incapacity, which specified that "[t]he continuance **does not waive any rights that the alleged incapacitated person or any interested person has with regard to any objections or defenses to be raised in the proceedings**." (emphasis added).

On January 20, 2016, private counsel filed the following: (1) a motion to dismiss the petition to determine incapacity, which will be addressed more fully below; (2) a motion to strike the reports of the examining committee as untimely filed; (3) a motion to strike the report of examining committee member Neda Picuric because it was both untimely and the examination was primarily conducted in English despite M.S. advising her that his primary language is Spanish; and (4) a declaration that the proceedings are adversary.

The amended motion to dismiss the petition to determine incapacity was premised, in part, on the failure of the Elisor to personally serve the Notice and Order on M.S. and to file the requisite return of service; the failure of appointed counsel to meet with M.S. to notify him of the

proceedings or to meet with M.S. prior to the filing of her objection to the retention and substitution of private counsel selected by M.S.; and the failure of the examining committee members to file their reports within the time prescribed by section 744.331(3)(e) and the probate court's Notice and Order. The amended motion to dismiss argued that these requirements are mandatory, and therefore, the failure of the Elisor, appointed counsel, and the examining committee members to comply with these mandatory requirements constituted fundamental error, denying M.S. of due process and resulting in prejudice to him. The relevant paragraphs of the amended motion to dismiss are as follows:

4. [M.S.] has been consistently denied the appropriate due process and procedures required in these proceedings under Chapter 744 of the Florida Statutes, the Florida Probate Rules, and case authority. In addition, the Petition is fatally flawed and the relief requested barred by the doctrines of unclean hands and estoppel. As a result, the Petition must be dismissed.

5. Court-Appointed Counsel was appointed the Elisor and required to personally serve the Notice and Order on [M.S.], read the Notice and Order to [M.S.], and file a return of service within fifteen days of the date of the Notice and Order. (Ex. 1, ¶3).

6. Court-Appointed Counsel failed to accomplish any of these required tasks.

7. Court-Appointed Counsel met with [M.S.] for the first time on January 7, 2016, the date of a hearing on [M.S.'s] Emergency Motion for Substitution of Counsel, just minutes prior to the hearing and after filing a pleading adverse to [M.S.] without his

permission. She spoke with [M.S.] briefly for the first time on January 6, 2016 *by telephone, although her billing records demonstrate that she communicated with counsel for Petitioner on more than one occasion.*

8. The Court-Appointed Counsel filed an objection to the retention of private counsel selected by [M.S.] that contained within the pleading statements adverse to [M.S.]. *The Court entered an Order on January 7, 2016 authorizing the retention of private counsel and discharging the Court-Appointed Counsel.*

9. [M.S.] is entitled to proper notice under Florida law and the Florida Probate Rules, as are consistent with due process and [M.S.'s] fundamental Constitutional rights. §744.331(1), Fla. Stat. (2015); §744.33l(5)(a), Fla. Stat. (2015); *In re Fey*, 624 So.2d 770, 771-72 (Fla. 4th DCA 1993) (finding that failure to follow the "very specific procedures" outlined in §744.331 of the Florida Statutes created a violation of the alleged incapacitated person's due process and equal protection of the laws); Fla. Prob. R. 5.550(b)(2).

10. The Court-Appointed Counsel also failed to file a *notice of* adversary proceeding within the timeframe allotted under the Notice and Order. (*See* Notice and Order, ¶4 (providing that any party contemplating that the proceedings will be adversarial must file a notice, pursuant to Rule 5.025 of the Florida Probate Rules within five (5) days of receipt of the Notice and Order).

11. As of the date of *the filing of the initial Motion to Dismiss, January 13, 2016*, more than thirty days after the Petition was filed, [M.S.] *had* not received proper service of notice for these proceedings, *nor a certification that notice was served upon him as ordered by this Court*.

12. As a result *of these irregularities and failure to follow the dictates of Florida Statutes, Florida Rules, and Florida case authority*, the Petition must be dismissed.

13. The examining committee members had 15 days from appointment to examine [M.S.] and submit their individual reports with the Court. "Each member of the examining committee **must** submit a report within 15 days **after appointment**."  §744.331(3)(e), Fla. Stat. (2016) (emphasis added).

14. Taking into consideration that the fifteenth day following their appointment, December 25, 2015, was a legal holiday, the examining committee reports were to have been submitted to the Court by December 28, 2015, the first business day following the legal holiday.[15]

15. One of the examining committee members, Dr. David Echavarria, met with [M.S.] on December 29, 2015 and submitted his report on that same day—one day after the 15th day cutoff period.  As of the date of filing *the initial Motion to Dismiss, January 13, 2016, that was* the only examining committee report *filed with the Court and received by* [M.S.].

16. Dr. Manuel E. Alvarez met with [M.S.] on January 5, 2016, twenty-six (26) days after appointment *and certainly not within the timeframe required. The report of Dr. Alvarez was first received by the Court on January 11, 2016, a date still beyond any timeframe permissible in this proceeding.*

17. Dr. Neda Picuric had her first appointment to meet with [M.S.] on January 7, 2016, but rescheduled the time to the following day, January 8, twenty-nine (29) days after her

[15] The Notice and Order also indicates that the examining committee reports **must** be filed "at least five days before the hearing [on the Petition], **or** within fifteen (15) days of the date of this order, **whichever is earlier**." (Ex. 1, ¶1 (emphasis added)). Although the language makes clear that the deadline of December 28 is the cutoff for the filing of the examination committee reports, a very liberal interpretation would provide that the reports might have been able to be filed by January 8, 2016—within five days of the hearing set in the Notice and Order for January 13, although his was not the earlier of the times specified in the Notice and Order. Only one of the examining committee reports met that hypothetical deadline.

appointment. *The report of Dr. Picuric was first received by the Court on January 13, 2016, a date still beyond any timeframe permissible in this proceeding.*

18. Because the examining committee reports are all untimely, the procedural requirements of §744.331 of the Florida Statutes (2015) have not been met and the Petition should be dismissed.

The amended motion to dismiss the petition to determine incapacity argued that the failure to comply with section 744.331 constituted fundamental error and provided the relevant statutory and case law authority in support of this argument.  As additional grounds for dismissal, the motion claimed that the petition to determine incapacity, which was issued under penalty of perjury, was "riddled with factual errors" requiring dismissal.  For example, the petition to determine incapacity attests that English is M.S.'s primary language when the "Petitioner knows fully well that [M.S.'s] primary language is Spanish."  This allegation is relevant, as it is alleged in the separate motion to strike the examining committee report of Neda Picuric, filed on the same date, that Ms. Picuric conducted the bulk of her examination of M.S. in English despite M.S. clearly indicating to Ms. Picuric that Spanish is his primary language.

The record thus reflects that the grounds raised in the appeal were timely and properly raised and considered below.

**DISMISSAL OF THE PETITION TO DETERMINE INCAPACITY**

33

After conducting a properly noticed and fully litigated hearing on M.S.'s amended motion to dismiss the petition to determine incapacity, the probate court issued an order granting the motion. The hearing transcript reflects and counsel for M.S. properly conceded at oral argument before this Court that, although the probate court denied Gilberto's motion for leave to amend the petition to determine incapacity, the dismissal of the petition to determine incapacity was without prejudice to file a new action in the event the parties are unable to reach a settlement of the issues.

The probate court's order dismissing the petition to determine incapacity was based on the following three stated grounds:

A. These proceedings have failed to satisfy [M.S.'s] due process rights or to comply with the procedural requirements of §744.331, Florida Statutes.
B. The reports filed by the examining committee members were not filed within the time prescribed by §744.331 of the Florida Statutes or the Notice and Order issued by this Court on Court on [sic] December 10, 2015.
C. The court-appointed counsel, prior to being substituted by private counsel for [M.S.], made arguments in a filing with this Court and in a prior hearing that were against the interests of [M.S.'s] and were prejudicial to [M.S.], which statements were objected to by private counsel for [M.S.].

As all three grounds are supported by the record and Florida law, the order must be affirmed.

It is undisputed that Ms. Valdes, as the court appointed Elisor, failed to comply with section 744.331(1), Florida Probate Rule 5.550(b)(2), and the

34

probate court's Notice and Order. She did not meet with, serve, or read the Notice and Order to M.S., or file a return of service within fifteen days certifying that she had complied with these directives. Although Ms. Valdes was appointed as Elisor on December 10, 2015, the first time she met with M.S. was on January 7, briefly and just moments prior to the scheduled hearing on M.S.'s motion for substitution of counsel. During this brief contact, Ms. Valdes did not attempt to serve or provide M.S. with the requisite notice. The record suggests that this brief contact was made in Ms. Valdes' capacity as M.S.'s appointed counsel and was related to the motion for substitution of counsel.

It is also undisputed that the reports were untimely filed in violation of section 744.331(3)(e) and the probate court's Notice and Order. Thus, the first two grounds found by the probate court in its order granting the amended motion to dismiss are clearly supported by the record. Although not necessary for affirmance of the probate court's order, the record also supports the third finding—that prior to the substitution of private counsel, the court appointed counsel (Ms. Valdes) made arguments in a court filing that were against M.S.'s interests and prejudicial to M.S. Based on these findings, the probate court declined to address the various other objections levied by M.S.

## LEGAL ANALYSIS

The only remaining issue is whether the probate court erred by dismissing the petition to determine incapacity on the above stated and proved grounds for dismissal. The Legislature has made its intent clear in section 744.1012, which provides as follows:

> The Legislature finds that adjudicating a person totally incapacitated and in need of a guardian deprives such person of all her or his civil and legal rights and that such deprivation may be unnecessary. The Legislature further finds that it is desirable to make available the least restrictive form of guardianship to assist persons who are only partially incapable of caring for their needs. Recognizing that every individual has unique needs and differing abilities, the Legislature declares that it is the purpose of this act to promote the public welfare by establishing a system that **permits incapacitated persons to participate as fully as possible in all decisions affecting them**; that assists such persons in meeting the essential requirements for their physical health and safety, in protecting their rights, in managing their financial resources, and in developing or regaining their abilities to the maximum extent possible; and that accomplishes these objectives through providing, in each case, the form of assistance that least interferes with the legal capacity of a person to act in her or his own behalf. This act shall be liberally construed to accomplish this purpose.

(emphasis added)

In addition to its **stated** intent to allow incapacitated persons to participate as fully as possible and to interfere as little as possible with the legal capacity of an alleged incapacitated person, section 744.3201, Florida Statutes (2015), which establishes the petition requirements, and section

36

744.331, which establishes the procedures for determining incapacity, both use mandatory terms such as "must" and "shall." For example, section 744.3201(2) states that "[t]he petition **must** be verified and **must**" include specific identification information of the alleged incapacitated person, the factual information being relied on to believe the person is incapacitated, and the primary language of the alleged incapacitated person, among other things. (emphasis added).

Nearly every provision in section 744.331 contains mandatory language. Relevant to this appeal are the following provisions:

(1) NOTICE OF PETITION TO DETERMINE INCAPACITY.—Notice of the filing of a petition to determine incapacity and a petition for the appointment of a guardian if any and copies of the petitions **must** be served on and read to the alleged incapacitated person. The notice and copies of the petitions **must** also be given to the attorney for the alleged incapacitated person, and served upon all next of kin identified in the petition. The notice **must** state the time and place of the hearing to inquire into the capacity of the alleged incapacitated person and that an attorney has been appointed to represent the person and that, if she or he is determined to be incapable of exercising certain rights, a guardian will be appointed to exercise those rights on her or his behalf.
. . . .

(3) EXAMINING COMMITTEE.—
(a) Within 5 days after a petition for determination of incapacity has been filed, the court **shall** appoint an examining committee consisting of three members. One member **must** be a psychiatrist or other physician. . . . Members of the examining committee **must** be able to communicate, either directly or through an interpreter, in the language that the alleged

incapacitated person speaks or to communicate in a medium understandable to the alleged incapacitated person if she or he is able to communicate. The clerk of the court **shall** send notice of the appointment to each person appointed no later than 3 days after the court's appointment.

. . . .

(e) Each member of the examining committee **shall** examine the person. Each examining committee member must determine the alleged incapacitated person's ability to exercise those rights specified in s. 744.3215. . . . Each member of the examining committee **must** submit a report within 15 days after appointment.

. . . .

(h) A copy of each committee member's report **must** be served on the petitioner and on the attorney for the alleged incapacitated person within 3 days after the report is filed and at least 5 days before the hearing on the petition.

(words "shall" and "must" emphasized).

Rule 5.550 also contains mandatory language:

**(a) Contents**. The petition to determine incapacity **shall** be verified by the petitioner and **shall** state:

. . . .

**(b) Notice.**

(1) *Contents.* The notice of filing the petition to determine incapacity **shall** state:

. . . .

(2) *Service on Alleged Incapacitated Person.* The notice and a copy of the petition to determine incapacity **shall** be personally served by an elisor appointed by the court, who may be the court appointed counsel for the alleged incapacitated person. The elisor **shall** read the notice to the alleged incapacitated person, but need not read the petition. A return of service **shall** be filed by the elisor certifying that the notice and petition have been

38

served on and the notice read to the alleged incapacitated person. No responsive pleading is required and no default may be entered for failure to file a responsive pleading. The allegations of the petition are deemed denied.

(3) *Service on Others.* A copy of the petition and the notice **shall** also be served on counsel for the alleged incapacitated person, and on all next of kin.

(words "shall" emphasized).

The probate court's Notice and Order uses mandatory language as well.

> The examining committee **shall** determine [M.S.'s] ability to exercise the rights the Petitioner seeks to have removed. The committee is therefore **required** to secure [M.S.'s] presence and conduct a comprehensive examination that will enable it to thoroughly ascertain [M.S's] abilities. Accordingly, the committee **shall** have access to, and may consider, [M.S.'s] previous examinations, including but not limited to, habilitation plans, school records, psychological and psychosocial reports voluntarily offered for use by [M.S.]. At least five (5) days before the hearing, or within fifteen (15) days of the date of this Order, whichever is earlier, a written report that confirms to the requirements of section 744.331, Florida Statutes, **must** be filed with the Clerk of this Court with copies sent to [M.S.], the Petitioner, and all attorneys of record. *Absent a declaration of adversary proceedings pursuant to paragraph four (4) of this order, the Court **shall** consider the examining committee members' written reports when making a determination of incapacity.* If the Court finds [M.S.] is incapable of exercising certain rights, a guardian may be appointed.
> . . . .

> (3) Service by Elisor

> [M.S.'s] above-named court appointed attorney is also appointed Elisor in this matter. The Elisor **shall** personally serve this notice and the petition(s) filed herein on, and read the notice to, [M.S.]. The Elisor **shall** file a return of service, no later than fifteen (15) days from the date of this Order, certifying that the

> notice and petition(s) have been served, and that the notice has been read to, [M.S.].

(words "shall," "must," and "required" emphasized).

Despite this mandatory language, the majority contends, without specifically stating so, that the requirements of section 744.331 and rule 5.550 are not really mandatory and that because M.S. later became aware that a petition to determine his capacity had been filed, that somehow obviated the clear mandate of the above statute and rule which require **personal service** of the petition upon M.S. by the elisor who must actually read the petition to him and file a return of service with the probate court verifying that personal service was effectuated. But that is not the law either in probate court or any court. See McDaniel v. FirstBank Puerto Rico, 96 So. 3d 926, 929 (Fla. 2d DCA 2012) (holding that "actual knowledge of a suit will not cure insufficient service of process . . . [b]ecause of the fundamental constitutional implications of service of process, 'statutes governing service of process are to be strictly construed and enforced.'") (quoting Shurman v. Atl. Mortg. & Inv. Corp., 795 So. 2d 952, 954 (Fla. 2001)).

A review of the case law addressing section 744.331 and rule 5.550 reflects that the appellate courts have concluded that compliance with the statute and the rule is mandatory. In In re Fey, 624 So. 2d 770 (Fla. 4th DCA

1993), the Fourth District Court of Appeal noted both that the legislative intent and Florida's guardianship law "sets forth very specific procedures which shall be followed to determine incapacity, including but not limited to the giving of notice, providing independent counsel, appointing an examining committee, [and] submitting a committee report." Id. at 771-72. The In re Fey court concluded that the language of section 744.331 and rule 5.550 was clear and that **compliance was mandatory**. Id. at 772.

In Rothman v. Rothman, 93 So. 3d 1052 (Fla. 4th DCA 2012), the Fourth District Court of Appeal granted a petition for a writ of mandamus filed by an alleged incapacitated person to require the trial court to dismiss a petition to determine his capacity. In granting the writ, the Fourth District relied on its previous holding in In re Keene, 343 So. 2d 916, 917 (Fla. 4th DCA 1977), that "proceedings to determine the competency of a person are generally controlled by statute and where a statute prescribes a certain method of proceeding to make that determination, that **statute must be strictly followed**." Id. at 1054 (emphasis added). The portion of section 744.331 at issue in Rothman was subsection (4) which provides that, "if a majority of the examining committee members conclude that the alleged incapacitated person is not incapacitated in any respect, the court shall dismiss the petition." Because the Fourth District concluded that the statute

41

must be strictly followed, and two of the examining committee members had concluded that the alleged incapacitated person was not incapacitated, the Fourth District ordered that the petition to determine incapacity be dismissed.

The Fifth District has also found that "**[c]ompliance with the requirements of section 744.331 is mandatory and the trial court's failure to adhere to those requirements constitutes reversible error**." Borden v. Guardianship of Borden-Moore, 818 So. 2d 604, 609 (Fla. 5th DCA 2002) (emphasis added); see also Adelman v. Elfenbein, 174 So. 3d 516, 518 (Fla. 4th DCA 2012) (holding that "[t]he statutes governing the adjudication of incapacity and the appointment of a guardian for an incapacitated person are to be strictly construed" and "compliance with the requirements of section 744.331, Florida Statutes, is mandatory and failure to adhere to those requirements constitutes 'error of fundamental proportions'") (internal citations omitted).

The majority further concludes that to require compliance with the strict mandates of section 744.331 and rule 5.550 is "draconian." However, the majority's displeasure with the mandatory language and requirements is not grounds to ignore them. Any changes to the mandatory language contained in section 744.331 and rule 5.550 must come from the Legislature, not the Bench.

## CONCLUSION

The language of section 744.331, rule 5.550, and the probate court's Notice and Order is clear, unambiguous, and mandatory—and for good cause. A determination of incapacity may result in the loss of a person's legal rights and the freedom to make basic life choices, such as financial decisions.

The probate court, therefore, correctly determined that if it allowed the proceedings to proceed "the court would be affecting the due process rights of [M.S.]. They've already been put on a rough path by what happened with the court appointed attorney who made disclosures that were objected to." Therefore, the trial court correctly concluded: "So I think that if we have a petition to determine capacity, we need to start over." As the Fourth District aptly noted: "In our present day paternalistic society we must take care that in our zeal for protecting those who cannot protect themselves we do not unnecessarily deprive them of some rather precious individual rights." Adelman, 174 So. 3d at 518-19 (quoting In re McDonnell, 266 So. 2d 87, 88 (Fla. 4th DCA 1972)).

Accordingly, I cannot agree with an opinion that ignores clear and unambiguous mandatory language and concludes that simply because the petition was facially sufficient, strict compliance with these mandatory

43

directives is not required.  I also do not agree that an amendment of a "facially sufficient" petition can cure the procedural infirmities in this case. M.S. was entitled to notice prior to the proceedings that ensued.  Timely notice potentially could have protected M.S. from the prejudice he has alleged.